**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| MARNAVI SpA, as agent for JILMAR SHIPPING S.A., <br><br> Plaintiff, <br><br> vs. <br><br> DONALD P. KEEHAN, ARLENE KEEHAN, ADVANCED POLYMER SCIENCES, INC.; ADVANCED POLYMER COATINGS, LTD F/K/A ADVANCED POLYMER COATINGS LLC, <br><br> Defendants. | C.A. No. 08-389 (SLR) |

**PLAINTIFF'S ANSWERING BRIEF IN OPPOSITION TO DEFENDANT
ADVANCED POLYMER COATINGS, LTD.'S MOTION TO DISMISS**

Plaintiff, Marnavi SpA ("Marnavi"), as agent for Jilmar Shipping, S.A. ("Jilmar"), by and through its undersigned attorneys, respectfully submits this memorandum in opposition to the Motion to Dismiss Complaint by Advanced Polymer Coatings, Ltd. f/k/a Advanced Polymer Coatings, LLC ("APC" or "Defendant"), as follows:

**PRELIMINARY STATEMENT**

Marnavi SpA, a company organized under the laws of Italy, has sued Delaware-organized APC for various violations of Delaware law in connection with Defendants' efforts to misuse Delaware's business entity laws to evade a $6 million arbitration award resulting from damages APC caused in Italy. APC has moved to dismiss on the grounds of lack of diversity jurisdiction and improper venue, both of which ground should be rejected by this Court. As demonstrated below, this Court may properly exercise subject matter jurisdiction over this diversity action, and venue is proper here.

Diversity exists here because Plaintiff is a citizen of a foreign state and all of the Defendants are citizens of a State within this country. Thus, the requirements of 28 U.S.C. §

1332(a)(2), which grants jurisdiction over cases where the dispute is between citizens of a State and citizens or subjects of a foreign state, have been met. Diversity under subsection (2) of section 1332(a) requires only that the parties on one side of the controversy be citizens of a State and on the other side, citizens or subjects of a foreign state.

Plaintiff has properly and adequately alleged that Plaintiff is a company organized under Italian law and that APC Ltd, formerly known as APC LLC, is a Delaware limited liability company whose two known members reside in Florida and/or Ohio. Plaintiff also alleged that Defendants APS and APC are companies formed under Delaware law and Defendants Donald J. Keehan and Arlene H. Keehan are directors and officers of APS, members of APC and residents of Ohio and/or Florida. Defendants argue that no allegations have been made as to the citizenship of all of the members of APC Ltd, implying that there may be others which are unknown to Plaintiff.

In its motion, Defendant offers no evidence, and makes no allegations, that any other APC members exist or that their citizenship, if known by the Court, would defeat diversity jurisdiction. Such knowledge was available to counsel for APC, as he has filed a notice of appearance for all of the defendants and is alleged to have been an active player in the drama between Marnavi and APC. Even assuming other members of APC were alleged to exist, the proper remedy would not be dismissal, but jurisdictional discovery to determine their citizenship and whether it has any implication on diversity jurisdiction.

This Court is also the appropriate venue for this action. As this Court has previously held, the venue statute requires that a substantial and "real relationship" must exist between the claim and the State of Delaware for venue to be appropriate under 28 USC § 1391. *Traynor v. Liu*, 495 F. Supp.2d 444, 449 (D. Del 2007). Such relationship exists here because Plaintiff

alleges misuse of Delaware business entity shield laws and seeks to hold Defendants liable for an arbitration award as alter egos of each other. Venue is also proper here because Plaintiff properly has filed the related petition to enforce the foreign arbitration award in this district, and dismissal of the action would result in the waste of party and court resources by creating duplicative proceedings.

## ARGUMENT

### I. THIS COURT HAS SUBJECT MATTER JURISDICTION OVER THIS ACTION

This is an action seeking to pierce the corporate veil of Delaware entities which have been used as vehicles to hide assets, including patents and other forms of intellectual property, belonging to Delaware entities in order avoid creditor claims.

Plaintiffs have properly alleged, and this Court possesses, diversity jurisdiction over APC pursuant to 28 U.S.C. § 1332.[1] Diversity jurisdiction requires complete diversity between all plaintiffs and all defendants. *Id.*; *City of Indianapolis v. Chas Nat. Bank of City of New York*, 314 U.S. 63, 69 (1941) (diversity jurisdiction requires that parties on "one side" of controversy be citizens of different states than parties on the "other side"). Section 1332(a)(2), provides that diversity jurisdiction exists where the dispute is between citizens of a State and citizens or subjects of a foreign state. In the present case, the Plaintiff is a citizen of a foreign state, Italy, and the Defendants are citizens or subjects of States. Two of the Defendants are Delaware-organized companies.

While neither the United States Supreme Court nor the Third Circuit has ever ruled on the issue, several Delaware courts have held that a limited liability company assumes the

---

[1] Section 1332 provides in relevant part that a federal district court has original jurisdiction over all civil actions where the matter in controversy exceeds $75,000 and is between citizens of a state and citizens of a foreign state. 28 U.S.C. § 1332(a)(2).

3

citizenship of its members. *See*, *e.g.*, *Grupo Dataflux v. Atlas Global Group, L.P.*, 541 US 567, 586 n.1 (2004) (noting that the United States Supreme Court has never determined whether the citizenship of each member of an LLC counts for diversity purposes); *Polak v. Kobayashi*, 2005 WL 2008306, at *2 (D. Del. Aug. 22, 2005) (stating that the citizenship of a limited liability company assumes the citizenship of its members)**.** Applying the foregoing to the allegations in the Complaint, it becomes clear that Plaintiff has properly alleged subject matter jurisdiction under 28 U.S.C. § 1332.

Plaintiff alleges in the Complaint that it is a corporation organized under the laws of Italy, Complaint, ¶ 11, and that APC is a limited liability company organized under the laws of Delaware. *Id*. ¶ 15. Plaintiff further alleges upon information and belief that Defendants Donald Keehan and Arlene Keehan are members of APC, *id*. ¶ 123(j), and that their residences are either Florida and/or Ohio. *Id*. ¶ 8. The allegations that Plaintiff is a foreign company, that APC is a Delaware limited liability company, and that two of Defendant's members or APC are residents of Florida and/or Ohio, properly state a prima facie case for diversity jurisdiction under section 1332 (a)(2).

Defendant APC asserts that Plaintiff has not made allegations about all of the members of APC, thereby implying that there might be other APC members beyond the ones identified by Plaintiff. However, APC has neither alleged nor submitted any evidence that other APC members in fact do exist or that Plaintiff has improperly identified the citizenship of any Defendant. To the extent that Plaintiff may be required to allege the citizenship of any unknown additional members of APC or the Defendant hereafter asserts that the citizenship of the known members has been incorrectly alleged, Plaintiff is entitled to jurisdictional discovery to determine the identity and citizenship of the alleged additional members or the correct

citizenship of the Defendants.  In the Third Circuit jurisdictional discovery is to be freely granted.  *See*, *e.g.*, *Massachusetts School of Law at Andover v. American Bar Association*, 107 F.3d 1026, 1042 (3d Cir.1997) (denying motion to dismiss and granting discovery).  This is even more important in a situation such as the present one involving a limited liability company and a close corporation, where the relevant information is non-public and uniquely in APC's possession.  *See*, *e.g.*, *Toys "R" Us, Inc. v. Step Two, S.A.*, 318 F.3d 446, 455 (3d Cir. 2003) (granting jurisdictional discovery where information was solely in defendant's possession).

Notwithstanding that the LLC membership is normally not public information, Plaintiff, through its diligent efforts, has been able to determine that Donald and Arlene Keehan are members of APC.  If APC has other members, such information is uniquely within Defendants' possession.  Such information can be provided in little time and at almost no cost to Defendant.  Indeed, APC could have submitted some evidence of the existence of such members and their citizenship to put this matter to rest, yet chose not to.  On the other hand, Plaintiff would suffer undue harm if it were unable to obtain information concerning APC's other members, and if this action were dismissed for lack of diversity jurisdiction.

Based on the foregoing, it is clear that (a) this Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 (a)(2), because Plaintiff has adequately alleged all defendants are citizens of a State and plaintiff is a citizen of a foreign state; and (b) to the extent that APC makes contrary allegations or submits evidence to the contrary, Plaintiff is entitled to jurisdictional discovery to establish this Court's jurisdiction.

## II. DELAWARE IS A PROPER VENUE FOR THIS ACTION

### A. Venue Is Proper In This District Because A Substantial And Real Relationship Exists Between Delaware And The Events Alleged In The Complaint

Plaintiff alleges that Defendants have misused the Delaware corporate and limited liability laws to transfer assets to and from Delaware-organized companies for little or no value in order to avoid paying Plaintiff damages relating to an arbitration award. In incorporating APS in Delaware, Defendants Donald and Arlene Keehan are alleged to have deliberately chosen to abuse the protections of this state's corporate laws. Almost immediately upon realizing that APS' botched refitting of the Joran would result in significant liability for APS, the Keehans created a Delaware LLC to continue APS' business, registered the new company, APC, in Ohio under a different name, changed APC name in Delaware, transferred APS' assets to the newly formed Delaware LLC and failed to pay APS' Delaware registration fees. But for their misuse of Delaware's laws, the Keehans could not have pulled off their scheme. Delaware has a public interest in policing its corporate laws and protecting them from abuse. This constitutes the requisite real relationship between this action and Delaware.

In ruling on a motion to dismiss for improper venue pursuant to 12(b)(3), "a plaintiff's choice of venue should not be lightly disturbed." *Traynor v. Liu*, 495 F. Supp.2d 444, 449 (D. Del 2007) (citing *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 879 (3d Cir. 1995)). In addition, APC has the burden of proving improper venue. *Traynor*, at 449 (stating that a moving party has the burden of proving improper venue); *see also Tuff Torq. Corp. v. Hydro Gear Ltd. P'ship*, 882 F. Supp. 359, 362 (D. Del. 1994) (even if it is not plaintiff's "home turf", plaintiff's choice of forum is "paramount"). APC has not provided any evidence or new allegations in support of its motion, and instead merely recites some of Plaintiff's allegations that the Defendants conduct

business both nationally and internationally. APC do not challenge Plaintiff's allegations regarding the Defendant's connections to Delaware. Thus, APC has failed to meet its burden.

> The general federal diversity venue statute provides that venue is proper in:
>
> (1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (3) a judicial district in which any defendant is subject to personal jurisdiction at the time the action is commenced, if there is no district in which the action may otherwise be brought.

28 U.S.C. § 1391(a)

Under section 1391 a defendant corporation is deemed to reside in any judicial district in which it is subject to personal jurisdiction at the time that the action is commenced. 28 U.S.C. § 1391(c).

In *CC Investors Corp. v. Raytheon Co.*, the Delaware federal district court applied the foregoing principles, and concluded that generally, venue is proper where personal jurisdiction exists and denied a 12(b)(3) motion to dismiss for improper venue on facts similar to the instant case. 2003 WL 22937748 (D. Del. Nov. 25, 2003). Specifically, the court found:

> [Defendant] Raytheon and the Defendants were incorporated in Delaware; and, as the Court noted in a Memorandum Opinion regarding Travel Air's Rule 12(b)(2) motion to dismiss, the Court has personal jurisdiction over Travel Air. Travel Air's actions in capitalizing the LLC, a Delaware entity, led to Plaintiff's instant action. The Court concludes that these acts were sufficient to establish personal jurisdiction over Travel Air. *See J. Jeffreys v. M. Exten*, 784 F. Supp. 146, 151 (D. Del.1992) (noting that personal jurisdiction may be asserted over a single act related to a jurisdiction, provided the resulting claim has its basis in the asserted transaction). Accordingly, the Court concludes that venue is proper in Delaware.

*Id* at *2. Here, APC has not contested personal jurisdiction and therefore waived any objection to same.[2] Indeed, in this case venue is proper pursuant to section 1391(a)(2) because, even more so than in *Raytheon*, a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in Delaware.

The substantiality standard is intended to preserve the element of fairness so that a defendant is not "haled into a remote district having no real relationship to the dispute." *Traynor v. Liu*, 495 F. Supp.2d at 450. However, the "substantiality" test is precisely that – "[i]t does *not* require a majority of the events to take place here, *nor* that the challenged forum be the best forum for the lawsuit to be venued" – but only requires that a substantial part of the events to have occurred in Delaware. *Traynor*, 495 F. Supp. at 450 (emphasis added). Furthermore, "substantiality" is a qualitative, not a quantitative inquiry. *Id*. It applies to omissions as well as acts that have a "close nexus" to the wrong. *Id*.

Plaintiff has plainly alleged that a "substantial part" of the events giving rise to its claims occurred in Delaware. At its core, the Complaint alleges that the Keehans have harmed Plaintiff by misusing Delaware's corporate and limited liability laws as a shield to avoid their contractual obligations to Jilmar. These obligations have been recognized by an arbitral tribunal in England and are the subject of a related enforcement action in this Court.

The Complaint alleges that Donald J. Keehan developed Siloxirane, a coating designed to protect surfaces from corrosive substances, including the cargo tanks of ships. Complaint, ¶ 44. Donald J. Keehan and Arlene Keehan chose the protections of Delaware's corporate laws and incorporated Defendant Advanced Polymer Sciences, Inc. under the laws of Delaware in 1986 to

---

[2] *See* FED.R.CIV.P. 12(h) (a party waives defenses of lack of personal jurisdiction and deficient process by failure to raise same in initial motion to dismiss). In the same manner, APC has also conceded proper service of process. *Id*.

exploit the technology. *Id*. ¶ 45. The Complaint also alleges that Donald and Arlene Keehan were directors and/or officers of this Delaware corporation, *id*. ¶ 92, and that Arlene Keehan is its President and sole shareholder. *Id*. ¶ 123(e).

In 1997, APS entered into a contract with Plaintiff to coat the Joran with Siloxirane. *Id*. ¶¶ 47-54. The Siloxirane coating failed to protect the ship from the corrosive effects of the acids carried in the Joran's cargo tanks, causing severe damage to the ship. *Id*. ¶¶ 55-64. That breach of contract is not at issue in this action as it was already resolved by arbitration in favor of Plaintiff. *Id*. ¶¶ 65-74.

The *real* issue in this diversity action is that only a few months after APS commenced its botched work on the Joran, the Keehans once again sought the protection of Delaware's laws, and created *another* Delaware company, this time a limited liability company, which it called – "APC LLC". *Id*. ¶ 86. A few months after creating APC, Denise Keehan, the Keehans' daughter and former vice president of APS, filed an application with the Ohio Secretary of State to permit APC to immediately commence business in Ohio as a foreign company to conduct the same business as the Keehan's other Delaware company, APS – the "Sales and Manufacture of Industrial Coating Products". *Id*. ¶¶ 87-89. Notably, although the Keehans had chosen "APC LLC" as the name for the new LLC and designated the company as such in its filings with the Delaware Secretary of State, they chose a different name in APC's application to the Ohio Secretary of State - APC Ltd. *Id*. ¶ 87. On November 26, 2002, *the very same day* that one of APS' lenders filed a complaint and cognivit judgment against APS, the Keehans filed a certificate with the Delaware secretary of state that changed the name of APC LLC to APC Ltd. *Id*. ¶ 94. To further their scheme, the Keehans let APS's registration status go void by failing to pay the required registration fees. *Id*. ¶ 14. The purpose of all of these name changes and

9

creation of new entities, was to defeat claims of creditors by secreting assets of the entity against which claims were being asserted.

The aforementioned allegations make clear that a "substantial part" of the actions alleged in the Complaint took place in Delaware.[3] The Keehans repeatedly and systematically abused Delaware's corporate laws in a fraudulent scheme to escape its lawful obligations to Plaintiff. All of the claims in the Complaint[4] are predicated on those acts, which taken in Delaware and under pursuant to Delaware law. Indeed, while the actual transfer of assets may have occurred in Ohio (something that would be the subject of discovery) none of the illegal transfers would have been possible but for the actions of the Defendants in Delaware, *i.e.*, the creation of a new Delaware, entity, to be the recipient of the fraudulently transferred assets. Thus, the "nexus" requirement of 1391(a) is clearly satisfied here.[5] As noted, the substantiality test is qualitative, not quantitative and, so long as it is met, venue must lie in the jurisdiction chosen by plaintiff. *Traynor*, 495 F. Supp. at 450. Even if a more substantial portion of the events alleged in the Complaint occurred in another venue, or even if the other venue is arguably more convenient, Plaintiff's choice of forum must be respected. *Id* at 450-51.

---

[3] Defendant's attempts to distort the Complaint by misstating facts (*i.e.*, claiming that that the sole connection to Delaware is APS' incorporation in 1986; MTD, at 3) and cherry-picking facts that, while forming the backdrop to Plaintiff's claims (*e.g.*, the performance of the contract overseas) have in fact nothing to do with whether venue exists, and should therefore be rejected for the ruses that they are. In any event, it is unclear how the Keehans' alleged residence in Florida, and the existence of the overseas offices of APS/APC, favors an Ohio rather than Delaware venue. Finally, given APC's self asserted huge economic successes, it should not pose any burden for either the Company or its members to defend this action in Delaware.

[4] In Claims I – III Plaintiff seeks declarations that APS, APC and the Keehans are alter egos of one another, that APS and APC have engaged in a de facto merger and that APC is the mere continuation of APC. Complaint ¶¶ 136- 162. In Claims IV – V, Plaintiff seeks damages for the fraudulent transfer of assets from APS to APC to evade APS' obligations to Marnavi. *Id.* ¶¶ 163- 184.

[5] As with the issue of personal jurisdiction, Plaintiff should also be entitled to discovery on the issue of venue.

Furthermore, APC continues to enjoy the protections of Delaware law due to its status as a Delaware LLC in good standing. Delaware has a strong public interest in ensuring that the state's business laws are not misused by persons seeking to avoid their legal obligations. *See*, *e.g.*, *Alcoa Inc. v. Alcan, Inc.*, 2007 WL 1948821, at *4 (D. Del. July 2, 2007) (holding that Delaware was a proper venue where three of four defendant companies were incorporated in Delaware and had enjoyed benefits of Delaware laws, and Delaware had an "interest in litigation regarding companies incorporated in [Delaware]") This follows all the more where Delaware law will apply to Plaintiff's claims. *See*, *e.g.*, *Resolution Trust Co. v. Cityfed Fin. Corp.*, 57 F.3d 1231, 1236, n.5 (3d Cir. 1995), *vacated on other grounds*, *Atherton v. F.D.I.C.*, 519 U.S. 213 (1997) (stating "the applicable law governing the liability of officers and directors for their stewardship of the corporation [is] the law of the jurisdiction of incorporation"); *Rapoport v. The Litig. Trust of MDNO Inc.*, 2005 WL 3277911, at *5 (Del. Ch. Aug. 9, 2005) (it is "well established that only the law of the state of incorporation governs and determines issues relating to a corporation's internal affairs" including matters pertaining to the relationships among the corporation and its officers and its officers, directors and shareholders, such as fiduciary duties).

APC has made no showing that the litigation in this forum would burden any defendants. APC has not submitted any evidence that APC, the other defendants or any potential non-party witnesses would be unwilling to travel to Delaware for trial. *Alcoa Inc. v. Alcan Inc.*, 2007 WL 1948821, at 4. In any event, even had Defendant submitted such evidence, it would not favor dismissal. *Id*; *see also Tuff Torq. Corp. v. Hydro Gear Ltd. P'ship*, 882 F. Supp. at 363 (holding, in the context of a 1404 motion, that "[i]f the transfer merely shifts the inconvenience from the plaintiff to defendants, the motion should not be granted"); *BAE Sys. Aircraft Controls, Inc. v. Eclipse Aviation Corp.*, 224 F.R.D. 581, 589 (D. Del 2004) (noting that where company

conducted business on an international scale and discovery would take place in locations convenient to the parties and witnesses, those factors did not favor transfer of action to another forum).

Defendant chose to take advantage of Delaware's business laws, Delaware has an interest in enforcing its laws, and Defendants can't assert unfairness in having such laws applied to them. They willingly subjected themselves to the Delaware Courts' jurisdiction and venue when they chose to form business entities here and then take other actions in Delaware in an effort to convey and secrete assets from one Delaware entity to another. Indeed, "[a] single act of incorporation in Delaware will suffice to confer personal jurisdiction over a nonresident defendant if such purposeful activity in Delaware is an integral component of the total transaction to which plaintiff's cause of action relates." *Shamrock Holdings of California, Inc. v. Arenson*, 421 F. Supp.2d 800, 804 (D. Del. 2006) (holding that venue was proper where cause of action related to formation in Delaware of corporate parent and subsidiary); *Tsokanelis v. Country Pure Foods, Inc.*, 337 F. Supp.2d 600, 604 (D. Del 2004) (declining motion to transfer case to Ohio even though defendant was located in, and claimed that all relevant documents and witnesses were there; defendant "voluntarily chose to incorporate in Delaware and avail itself of the laws of this State . . . . [and] cannot now claim that litigation in Delaware is too burdensome and warrants a transfer of venue without putting forth more than the argument that Ohio is a "more convenient forum for it"); *Argos v. Orthotec LLC*, 304 F. Supp.2d 591, 598 (D. Del. 2004) ("given [limited liability company] Orthotec's choice for incorporation, the court finds that it voluntarily exposed itself to the possibility of litigation in Delaware . . . [and] cannot now attempt to shield itself from litigation in this forum by arguing that no conduct occurred in

Delaware, that no injury was felt in Delaware, and that deposition and trial in Delaware would involve additional expense").

Finally, given the Defendants' rapidly growing international business and financial successes (as touted on APC's website), any travel expenses would not be overly burdensome. *Id* at 5; *see also* Ongoing Growth of Marineline® Coating Technology Fuels New Office Openings in Key Ship-Building Regions, dated July 15, 2008, at http://www.adv-polymer.com/marine/news/new_offices_7_08.asp (in which Donald Keehan notes that (i) APC will coat its 300th ship in the Fall of 2008, (ii) that the demand for the Siloxirane based Marineline coating has led APC to open offices "around the globe" in the United Kingdom, Turkey, China, Japan and Singapore, and (iii) that APC is preparing to launch its own company to apply Siloxirane).

### B. Venue Is Proper Because The Current Action Is Related To The Pending Arbitration Proceeding

Venue in this District is proper for the additional reason that this case is intertwined with Plaintiff's related proceeding to enforce its arbitration award against APS. *Marvani v. Advanced Polymer Sciences, Inc.*, Case No. (D. Del 2008) (the "Arbitration Enforcement Action"). The Federal Arbitration Act provides that venue to enforce a foreign arbitration award is proper "in any such court in which save for the arbitration agreement an action or proceeding with respect to the controversy between the parties could be brought, or in such court for the district and division which embraces the place designated in the agreement as the place of arbitration if such place is within the United States." 9 U.S.C. § 204. It is clear that the proper place for enforcement of an arbitration award against a Company is in its jurisdiction of incorporation. *See* 28 U.S.C. § 1391(c) (venue for action against corporate defendant is proper in any district in which corporate defendant is a citizen).

As noted above, the Arbitration Enforcement Action arises out of the same facts as the current action in diversity, the Defendants' breach of their obligations to APS. Upon the recognition of the Arbitration Award, Plaintiff will be entitled to enforce that award against APS and its alter egos. *See*, *e.g.*, *District Council No. 9 v. APC Painting, Inc.*, 272 F. Supp.2d 229 (S.D.N.Y. 2003) (noting that a petitioner may seek alter ego findings in a petition to confirm an arbitration award and citing cases). Both actions will require the taking of similar discovery, the identification and examination of similar witnesses and the presentation of similar facts to the courts. The dismissal, and subsequent transfer, of this action to Ohio will only result in the bifurcation of proceedings, at great cost to the Plaintiff and Defendants, and will waste judicial resources.

### III.    IF THE COURT CONCLUDES THAT VENUE IS PROPER, THIS CASE SHOULD BE TRANSFERRED TO OHIO TO AVOID PREJUDICE TO PLAINTIFFS

Defendant brings his motion to dismiss under Federal Rule of Civil Procedure 12(b)(3). The Defendant having failed to meet the standard required for dismissal under 12(b)(3), Plaintiff should therefore be allowed to proceed with the prosecution of this action in this Court. However, should the Court determine that Delaware is not the appropriate venue for this action, Plaintiff respectfully requests that the Court effectuate a transfer of this action to the appropriate federal district court in Ohio pursuant to 28 U.S.C. § 1406 so as to avoid any prejudice to the Plaintiff. 28 U.S.C. § 1406 provides in relevant part that "the district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." 28 U.S.C. § 1406(a). The interest of justice in this case favors transfer rather than dismissal.

This action was filed shortly before the expiration for the statute of limitations for Plaintiff's waste claim. If this action were dismissed, then the statute of limitations would expire

upon dismissal, thereby denying Plaintiff its day in court. The case law is clear that dismissal is highly disfavored in such cases. *See*, *e.g.*, *Stein v. Chemtex Int'l, Inc.*, 2004 WL 722252, at *3 (D. Del. March 31, 2004) (transferring case pursuant to section 1406 because dismissal would unnecessarily prejudice plaintiff since statute of limitations had run since filing of action). This is especially so, given the disturbing allegations in Plaintiff's Complaint and Defendants' repeated history of trying to evade their lawful obligations through schemes of fraud and deceit.

Finally, Plaintiff advises the Court that it has recently learned from its process server that the other three defendants to this action, Donald Keehan, Arlene Keehan and APS have been served (the Keehans both by personal service and through their Delaware agents, and APS by personal service upon the Keehans), and their answers are now due. Plaintiff requests in the interests of judicial economy that this Motion be resolved along with any motions filed by those Defendants.

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that Defendant APC's Motion to Dismiss be denied in its entirety.

Dated: August 4, 2008

**DUANE MORRIS LLP**

/s/ Frederick Rosner
Frederick B. Rosner
Suite 1200
1100 North Market Street
Wilmington, DE 19081-1246
302-657-4900

- and -

OF COUNSEL:

**SALANS**

Claude D. Montgomery, Esq.
Paul C. Gunther, Esq.
620 Fifth Avenue
Rockefeller Center
New York, New York 10020
212-632-5500

*Attorneys for Marnavi SpA as agent for Jilmar Shipping S.A.*

## CERTIFICATE OF SERVICE

I, Matt Neiderman, hereby certify that on August 4, 2008, I caused a copy of the foregoing document to be served upon the following counsel of record via e-filing:

**Tara M. DiRocco**
Cross & Simon LLC
913 North Market Street, 11th Floor
P.O. Box 1380
Wilmington, DE 19899-1380

/s/ Matt Neiderman
Matt Neiderman  (Del. I.D. No. 4018)