# EXHIBIT 21



# TECHNOLOGY LICENSE AGREEMENT

This License Agreement is made and entered into as of the 21st day of April, 2004, by and between Polymers 2000, LLC, an Ohio Limited Liability Company, located in Avon, Ohio 44011 ("Licensor") and Advanced Polymer Coatings, Ltd., a Delaware corporation having a place of business at 951 Jaycox Road, Avon, Ohio 44011 ("Licensee"). (Licensor and Licensee are collectively referred to herein as the "Parties".)

## ARTICLE 1: RECITALS

WHEREAS, Licensee is engaged in the business of designing, manufacturing, and selling high performance resin systems in the industrial, military and aerospace industries; and

WHEREAS, Licensor has developed and patented an organic/inorganic silicone oxide resin matrix design with anti abrasive/anti corrosive properties known as "Siloxirane"; and

WHEREAS, Licensee desires to exploit this technology through the development of products manufactured with Siloxirane on an exclusive worldwide basis; and

WHEREAS, Licensor is willing to grant Licensee an exclusive worldwide license subject to the covenants and undertakings set forth herein.

NOW, THEREFORE, incorporating the forgoing "WHEREAS" provisions as evidencing the intent of the parties it is agreed:

## ARTICLE 2: DEFINITIONS

**2.1    Use Throughout.** Terms defined in this Article 2 and parenthetically elsewhere shall have the same meaning throughout this Agreement. Defined terms may be used in the singular or the plural.

1

**2.2     Affiliate:** shall mean any corporation or other business entity controlled by, controlling, or under common control with Licensee. For this purpose, "control" means direct or indirect beneficial ownership of at least fifty percent (50%) of the voting stock, or at least fifty percent (50%) interest in the income of such corporation or other business.

**2.3     Licensor's Technology:** shall mean the technology contained within United States patent numbers 6,180,723 and 6,391,979 and patents pending and all knowledge and know how of Licensor concerning the matrix design and performance capabilities of the epoxide resins.

**2.4     Developments:** shall mean any and all improvements and developments whether or not patented, irrespective of the maker thereof, relating to or derived from Licensor's Technology or its use, including without limitation, any process, method, technique or know-how, or designs for machines, equipment or other devices, or components or modifications, which perform, enable or improve the use of the Licensor's Technology.

**2.5     Effective Date:** shall mean the date set forth in the opening paragraph on page one of this Agreement.

### ARTICLE 3:  RIGHTS GRANTED

**3.1     Exclusive License.** Subject to the terms, covenants, conditions and limitations set forth in this Agreement, and to the extent lawful, Licensor hereby grants to Licensee an exclusive right and license to Licensor's Technology and Developments for any lawful purpose.

**3.2     License to Affiliates.** Licensor hereby grants to Licensee the right to extend the license granted in Section 3.1 to Licensee's Affiliates, subject to the terms and conditions of this

Agreement. Licensee shall give Licensor prompt written notice of each such extension and copies of all agreements relating thereto, and shall notify Licensor of any subsequent termination thereof.

**3.3     Right to Sublicense.** The license granted to Licensee under Section 3.1 shall include the right to sublicense Licensor's Technology and Developments to others, subject to the following restrictions:

**3.3.1     Notice to Licensor.** Before any sublicense granted under Section 3.3 may take effect, Licensee must give Licensor notice of the sublicensee's identity and of the material terms of the sublicense. Licensor shall have thirty (30) days from the date of Licensee's notice to object in writing to the sublicense based upon Licensor's reasonable concern that the confidentiality of Licensor's Technology and Developments will not adequately safeguarded in connection with the sublicense. If Licensor does not object during the thirty (30) day period, the sublicense shall be effective the first day immediately following the expiration of the thirty (30) day period.

## ARTICLE 4: TECHNICAL INFORMATION

**4.1     Disclosure of Technology.** For the purpose of enabling Licensee to more fully exercise the right and license granted to it under Article 3, within ten (10) days after the Effective Date of this Agreement, Licensor shall provide to Licensee copies of all documents and media which embody or relate to Licensor's Technology. Licensor affirms that such materials are in his possession in such detail as would be required by Licensee to manufacture Licensed Product of the same quality, grade and function as that produced by Licensor.

**4.2     Disclosure of Developments.** Licensor shall, during the life of this Agreement, disclose to Licensee all Developments by Licensor pertaining to Licensor's Technology, and all Developments obtained by Licensor from third parties which Licensor may lawfully disclose.

## ARTICLE 5: BEST EFFORTS TO SELL AND PAYMENTS

**5.1     Reasonable Efforts to Sell.** So long as the Licensed Products are competitive in the market and have not become obsolete, Licensee agrees to exercise its best efforts to market and sell Licensed Products.

**5.2     Initial Payment and Running Royalty.** In consideration of Licensor's Technology and Developments, the license granted to Licensee, and the performance of Licensor's other obligations under this Agreement, Licensee shall pay to Licensor the following:

     **5.2.1   License Fee.** Licensor shall pay to Licensee a license fee in the amount of One Hundred Thousand Dollars ($100,000.00).

     **5.2.2   Royalty Payments.** Commencing with fiscal year 2005 Licensee shall pay to Licensor a royalty computed at the rate of six percent (6%) of Licensee's gross sales as reported on Licensee's Federal Income Tax.

**5.3     Sublicense Royalty Sharing.** If Licensee grants sublicenses in accordance with Section 3.3, Licensor and Licensee shall share the sublicense royalties equally; provided, however, Licensor's entitlements in the royalties from any sublicensee shall in no event be less than seventy five percent (75%) of the amount to which Licensor would have been entitled had the sublicensee's gross sales had been those of the Licensee.

**5.4**     **Payment of Royalties.** Royalties shall be paid in accordance with this Article 5 as follows:

     **5.4.1**   Contemporaneous with the filing of its Federal Income Tax Return Licensee shall provide Licensor with a signed copy of its Federal Income Tax Return and the royalty payment described in section 5.2.2.

     **5.4.2**   Sublicensee's royalties shall be due and payable in accordance with the terms of the Sublicense. Licensee shall be responsible for its Sublicensee's payment of royalties and Licensee shall pay Licensor all accrued royalties irrespective of its receipt of payment from Sublicenses.

     **5.5**     **Method of Payment.** All royalty payments made in accordance with this Article 5 shall be paid by check payable to Polymers 2000, LLC, or as otherwise agreed upon by the parties and shall be mailed directly to:

Polymers 2000, LLC
P.O. Box 74
Avon, Ohio 44011

## ARTICLE 6: CONFIDENTIALITY

     **6.1**     **Licensor's duty of Confidence.** Licensor shall at all times during and after the Term of this Agreement hold in strictest confidence all confidential and proprietary information of Licensee obtained in any manner from Licensee or while on Licensee's premises, shall take all reasonable steps to keep such information confidential, shall not use such information for any purpose, and shall not disclose such information directly or indirectly to third parties, provided that such information is in written or other tangible form and clearly marked or identified as

being confidential at the time of disclosure, or, if disclosed orally, such information shall be identified as confidential at the time of disclosure with subsequent confirmation to Licensor in writing within ten (10) days after the disclosure identifying the date of disclosure and type of information disclosed. The obligations set forth in this Section 6.1 shall not apply to any information that:

      **6.1.1**  is disclosed by, or readily ascertainable through, ordinary disassembly, inspection, measurement and analysis of products sold by Licensee;

      **6.1.2**  is publicly available at the time of disclosure;

      **6.1.3**  is lawfully obtained in good faith by Licensor from third party which is legally entitled to disclose the information and which will not violate any secrecy obligation to Licensee by doing so;

      **6.1.4**  is lawfully in the possession of Licensor, in any recorded form, before the time of disclosure, and such recorded form is produced by Licensor to Licensee within ten (10) days of Licensor's disclosure thereof;

      **6.1.5**  is disclosed by Licensor with the permission of Licensee on a nonconfidential basis; or

      **6.1.6**  is developed by or on behalf of Licensor by individuals who have not developed or received information under this Agreement.

    **6.2**    **Licensee's Duty of Confidence.** Licensee shall at all times during and after the Term of this Agreement hold in strictest confidence and take all reasonable steps to keep confidential Licensor's Technology and Developments acquired form Licensor and shall not disclose Licensor's Technology or Developments to third parties unless otherwise permitted to

do so under the terms of this Agreement (e.g., to Affiliates and sublicensees), provided that such information is in written or other tangible form and clearly marked or identified as being confidential at the time of disclosure or, if disclosed orally, such information shall be identified as confidential at the time of disclosure with subsequent confirmation to Licensee in writing within ten (10) days after disclosure identifying the date of disclosure and type of information disclosed.  The obligations set forth in this Section 6.2 shall not apply to any information that:

 **6.2.1** is disclosed by, or readily ascertainable through, ordinary disassembly, inspection, measurement and analysis of products sold by Licensor;

 **6.2.2** is publicly available at the time of disclosure:

 **6.2.3** is lawfully obtained by Licensee from a third party which is legally entitled to disclose the information and which will not violate any secrecy obligation to Licensor by doing so;

 **6.3** **Disclosures to Employees.**  Licensee shall have the right to disclose Licensor's Technology and Development to Licensee's employees and, with Licensor's prior written approval, which approval shall not be unreasonably withheld, to Licensee's prospective suppliers and contractors, to whom such disclosure is necessary for performance of this Agreement; provided, however, that Licensee shall first obtain from each employee, supplier and contractor a confidentiality agreement and Licensee shall promptly deliver copies of all such confidentiality agreements to Licensor.

 **6.4** **Standard of Care.**  Each party shall use no less than a reasonable standard of care to prevent disclosure of the other party's confidential information in accordance with this Article 6.

7

**6.5     Survival.** The obligations of the Parties under this Article 6 shall, except as otherwise expressly provided in this Agreement, survive termination of this Agreement or any license or similar right conferred under or in accordance with it.

## ARTICLE 7:  LICENSEE'S CONDUCT OF BUSINESS

**7.1     Books and Records.** Licensee shall keep books and records accurately showing its business activities.  Such books and records shall be preserved for at least three (3) years from the date of the royalty payment to which they pertain.

**7.2     Audits.** Upon written request and after reasonable notice, not more often than once each year, Licensee shall permit a representative selected by Licensor, except one to whom Licensee has a reasonable objection, to have access during normal business hours to such records of Licensee as may be reasonable and necessary to determine, with respect to any calendar year ending not more than thirty-six (36) months prior to the date of such request, the correctness of any report and / or payment made under this Agreement.  Upon the expiration of thirty-six (36) months following the end of any calendar year and absent a showing of fraud, the calculation of royalties payable with respect to such year shall be binding and conclusive upon Licensor, and Licensee shall be released from any liability or accountability with respect to royalties for such year.  All information obtained in or resulting from inspections under this Section 7.2 shall be maintained in confidence by Licensor and his representatives.

**7.3     Fees and Expenses.** The fees and expenses of Licensor's representatives performing the examination of records under section 7.2 shall be borne by Licensor.  However, if any error in royalties of more than three percent (3%) of the total royalties due for any year are

discovered, then the fees and expenses of the representative performing the examination shall be borne by Licensee.

     **7.4**    **Insurance.** Licensee shall, and shall cause each sublicensee to, maintain product liability insurance with respect to Licensed Product in an amount of not less than One Million Dollars U.S. ($1,000,000.00) per occurrence, and shall name Licensor as an additional insured. Licensee and each sublicensee shall, at least once in each calendar year during the term of this Agreement, provide proof of full and current compliance with Section 7.4.

## ARTICLE 8: REPRESENTATIONS, WARRANTIES AND COVENANTS

     **8.1**    **Licensor's Representations, Warranties and Covenants.** Licensor represents to, warrants to and covenants with Licensee as follows:

        **8.1.1**   **Right and Title.** Licensor has the full right and title to disclose the Licensor's Technology and Developments to Licensee and the power to grant the license and privileges contemplated under this Agreement free of any claim or encumbrance.

        **8.1.2**   **Accuracy of Information.** Licensor shall make a reasonable effort to verify the accuracy of all information disclosed to Licensee pursuant to this Agreement.

        **8.1.3**   **Infringement.** To the best of Licensor's knowledge, the use of the Licensor's Technology and Development and the manufacture use and sale of licensed Product as contemplated in this Agreement does not and will not infringe any patent, violate or misappropriate any trade secret, or violate any other proprietary or intellectual property right of any third party. However, regardless of whether Licensor knows of a potentially infringed patent, a potentially violated or misappropriated trade secret, or

9

other potentially violated proprietary or intellectual property right of any third party, or whether its belief (if it has one) as to infringement, misappropriation or violation is or is not correct, Licensee and the Affiliates of each of them shall be entitled to indemnification from Licensor as provided in section 10.3.

**8.1.4    Other Agreements.** Licensor is not party to and has no knowledge of any other agreement which in any way affects the rights which Licensee is obtaining under this Agreement.

**8.1.5    Claims.** There are no claims, actions, suits or proceedings commenced, pending or threatened against Licensor which will or might in any way affect or relate to the rights and benefits granted to Licensee hereunder and to the best of his knowledge, Licensor is not aware of any grounds existing on the date of signature of this Agreement on which any claims, actions, suits or proceedings might be commenced against Licensor with respect to the Licensor's Technology and Developments licensed hereunder.

**8.1.6** The Licensor's Technology and Developments have not been disclosed to any other party other than the Licensee.

**8.2    Licensee's Representations, Warranties and Covenants.** Licensee represents to, warrants to, and covenants with Licensor as follows:

**8.2.1    Authorization.** Licensee is dully authorized by the requisite Board of Directors action to enter into and fully perform this Agreement.

**8.2.2    Compliance of Sublicensee and Affiliates.** Licensee shall use its best efforts reasonable under the circumstances to assure compliance with all the terms and

10

conditions of this Agreement by its Affiliates and sublicensees to whom the Licensor's Technology and Developments shall be made available hereunder.

## ARTICLE 9:  INDEMNIFICATION

**9.1**     Each party shall indemnify, defend and hold harmless the other party hereto and any director, officer, employee, agent, anyone acting in active concert or participation with the other party, or Affiliate of the other party (each an "indemnified Party") from and against any and all claims, actions, suits, proceedings, liabilities, obligations, losses, and damages, fines, penalties, amounts paid in settlement, interest, deficiencies, costs and expenses (including reasonable attorney's fees, court costs and other out of pocket expenses incurred in investigating, preparing or defending the foregoing) (collectively, "Losses") incurred or suffered by an Indemnified party to the extent that the Losses arise by reason of or result from the failure of any representation or warranty made by the other party or the breach of any covenant made by the other party; provided, however, that indemnification of claims for infringement of patents and violations of trade secrets and other proprietary and intellectual rights of third parties shall be governed by Section 10.3.

## ARTICLE 10:  VIOLATIONS OF PROPRIETARY
## AND INTELLECTUAL PROPERTY RIGHTS

**10.1    Enforcement.**  Licensor shall notify Licensee of any act or asserted right of any third party which is inconsistent with the rights in the Licensor's Technology and Developments granted to Licensee in Section 3.1, to the extent Licensee becomes aware of such act or asserted

11

right. Unless otherwise expressly provided in this Agreement, should legal action against any third party be deemed necessary by the Parties for the protection of their respective interests under this Agreement, the Parties undertake to cooperate closely and helpfully by rendering all possible mutual support and assistance. Costs of any such legal proceedings as well as damages recovered or awarded therein or by settlement shall be shared equally between Licensor and Licensee. However, each party shall be entitled to refuse to participate in such proceedings. In such case the other party shall the right and authority to bring the action alone, and shall then pay all the costs itself and shall keep all the damages or bear all the losses of the proceedings itself.

   10.2   **Infringement of Proprietary Rights.** In the event that any action for patent infringement or for violation of any trade secret or other proprietary or intellectual property right of any third party is ether threatened or commenced against Licensee, or any Affiliate of Licensee concerning use of the Licensor's Technology or Developments, to the extent that Licensee, or any Affiliate of Licensee is requested or required to discontinue any of its rights under this Agreement, or that damages shall be sought therefore, Licensee shall promptly notify Licensor. Licensor shall advise Licensee whether Licensor desires to undertake the defense of such infringement action, and shall also make recommendations to Licensee as to what modifications might be made to the Licensor's Technology and Developments in order to limit or negate the claimed infringement or violation. If Licensor chooses not to undertake the defense of any such action, Licensee may, if it chooses, defend the infringement action and may settle it on terms acceptable to it, provided that such terms are also approved by Licensor, which approval shall not be unreasonably withheld. In any event, Licensor shall cooperate fully in all respects with Licensee, or any Affiliate of Licensee in the defense of such action and be

available for and to participate in such action to the extent necessary for Licensee, or any Affiliate of Licensee to defend such action.

**10.3    Indemnification.** In the event that it is determined by a final judgment or decision of a court of competent jurisdiction in any action covered by Section 10.2 above that the use by Licensee, or any Affiliate of Licensee of the Licensor's Technology or Developments thereof violate or infringe patents, proprietary rights or other intellectual rights of a third party, then Licensor shall indemnify, defend and hold harmless Licensee and any director, officer, employee, agent, anyone acting in active concert or participation with the other party, or Affiliate of Licensee from and against any and all claims, actions, suits, proceedings, liabilities, obligations, losses, damages, fines, penalties, amounts paid in settlement, interest, deficiencies, costs, and expenses (including reasonable attorney's fees, court costs, and other out of pocket expenses) incurred in investigating, preparing or defending such action.


## ARTICLE 11:  TERM AND TERMINATION

**11.1    Term.** The term of the license granted under Section 3.1 shall commence on the Effective Date of this Agreement and shall end at midnight on August 31, 2010, unless terminated sooner as otherwise provided herein or extended as provided herein.  This License Agreement shall be automatically renewed for four (4) additional five (5) year extended terms unless Licensee shall give to licensor at least sixty (60) days prior to the expiration of the initial term hereof or any extended term, as the case may be, written notice of its intention not to renew the License Agreement for an extended term or another extended term.

**11.2    Termination by Either Party.** In the event of a breach of this Agreement by either party, the non-breaching party may give written notice to the breaching party, specifying the breach complained of. If the breaching party does not correct the breach within thirty (30) days of such notice, the non-breaching party may immediately terminate the Agreement by written notice to the breaching party.

**11.3    Termination by Licensor.** Licensor shall have the right to terminate this Agreement in the event:

**11.3.1** Licensee fails to make any payment when due under this Agreement and such payment is not made within ten (10) days of written notice from Licensor;

**11.3.2** Licensee defaults under any term of this Agreement, other than a default involving the payment of money, which default is not cured within thirty (30) days of written notice from Licensor.

**11.3.3** Licensee becomes insolvent or admits in writing its inability to pay its debts as they mature or make an assignment for the benefit of creditors;

**11.3.4** A petition under any foreign or U.S. bankruptcy law is filed by Licensee; or

**11.3.5** Such a petition is filed by any third party or an application for a receiver of Licensee is made by anyone and such petition is not resolved in Licensee's favor within sixty (60) days. The rights and remedies set forth in this section are not exclusive and are in additional to any other rights and remedies available to Licensor under this Agreement or at law or equity.

14

**11.4    Existing Inventory.**  On the termination of this Agreement in accordance with Section 11.4 above, Licensee agrees to discontinue the use of Licensor's Technology and Developments.  Notwithstanding the above, Licensee shall have the right to sell materials in inventory on the date of termination for a period of sixty (60) days following such date, provided that royalties are paid on such sales in accordance with Sections 5.2.1 and 5.2.2 and that Licensor complies with the other terms and conditions of this Agreement with respect to such sales.

**11.5    Surviving Rights.**  Termination of this Agreement for any reason shall not eliminate the following obligations or rights, which shall survive to the extent necessary to permit their fulfillment or discharge;

**11.5.1**  Licensor's right to receive or recover and Licensee's obligation to pay royalties accrued or accruable for payment at the time of any termination; and

**11.5.2**  Licensee's obligation to maintain records and Licensor's right to conduct audits as provided in Article 7.

**11.6    Effects and Expiration or Termination.**  If the term of the License granted to the Licensee under Section 3.1 expires or if the License is terminated, all rights of the Licensee under the license shall cease and Licensee shall cease to use any port of Licensor's Technology or Developments and shall immediately return to Licensor all tangible disclosures of Licensor's Technology and Developments.

**11.7    Assumption of Sublicenses after Termination.**  Upon termination of Licensee's license for any reason other than the expiration of the term, the sublicenses granted in accordance with this Agreement which are then in effect shall not terminate, but shall be assigned to Licensor, provided Licensor assumes all prospective obligations under each such sublicense.

15

## ARTICLE 12:  ARBITRATION

**12.1    Generally.**  At the option of either party, and in substitution for any remedies otherwise provided by law, either party may give written notice to the other of its election to have any controversy or claim arising out of or relating to this Agreement or the breach thereof settled by arbitration in Cleveland, Ohio, before and in accordance with the Commercial Arbitration Rules of the American Arbitration Association.  The award rended in that arbitration will be binding on the Parties hereto, and judgment upon the award can be entered by any court having jurisdiction thereof.  Without detracting from the generality of the foregoing, the following specific provisions will also apply:

12.1.1  The proceeding will be held by a panel of three arbitrators, each party having the right to select one arbitrator with the third to be selected in accordance with the Rules of the American Arbitration Association; and

12.1.2  Before rendering their final decision, the arbitrators will first act as friendly disinterested parties for the purpose of helping the Parties reach compromise settlements on the points in dispute; and

12.1.3  The cost of the arbitration will be done in the discretion of the arbitrators.

## ARTICLE 13:  MISCELLANEOUS

**13.1    Governing Law.**  The validity and enforceability of this Agreement shall be interpreted under the laws of the State of Ohio and, as applicable, the laws of the United States of America.

16

**13.2    Merger Clause.** This Agreement supersedes all prior agreements of the Parties and constitutes the entire understanding between the parties, there being no covenants, warranties, averments, or representations of any nature, express or implied by either party to the other, except solely for those expressly set forth herein.

**13.3    Counterparts.** This agreement may be executed in any number of copies, but all such counterparts shall together constitute one and the same agreement.

**13.4    Waiver.** The waiver by either party of a breach or default of any provisions of this Agreement by the other party shall not be construed as a waiver of any succeeding breach of the same or any other provision, nor shall any delay or omission on the part of either party to exercise or avail itself of any right, power or privilege that it has or may have hereunder operate as a waiver of any right power or privilege of such party.

**13.5    Severability.** Both Parties hereby expressly agree and contract that if any sentence, paragraph, clause or combination of the same is in violation of any state or federal law of the United States of America, such sentences, paragraphs, clause, or combination of the same shall be inoperative and the remainder of this Agreements shall remain binding upon the parties hereto.  It is the intention of both Parties to make this Agreement binding upon the extent that it may be lawfully done under existing state and federal laws of the United States of America, whichever may be applicable.

**13.6    Assignment.** Except as otherwise expressly provided for herein, neither party shall assign its rights under this Agreement without the express written consent of the other party.

17

13.7   **Binding Effect.** This Agreement shall be binding upon, inure to the benefit of and be enforceable by the Parties hereto and their respective successors and assigns.

13.8   **Headings.** The headings and numbering of sections herein are for the convenience of the Parties only, and shall not be used to interpret any of the provisions of this Agreement.

13.9   **Modifications.** This Agreement may not be modified or amended in any manner except by written document duly executed by an authorized officer of each party.

IN WITNESS WHEREOF, the Parties hereto have executed this Agreement in duplicate on the date set forth above.

Licensor:                                                Licensee:
**Polymers 2000, LLC**                    **Advanced Polymer Coatings, Ltd.**

By:   _____       By:   _____

Name:   _Donald J. Keehn_ Name:   _Denise F. Keehan_

Title:   _Chairman_                          Title:   _V.P._

18