# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

MARNAVI S.p.A., as agent for
JILMAR SHIPPING S.A.,

        Plaintiff,

v.

DONALD J. KEEHAN, ARLENE KEEHAN,
ADVANCED POLYMER SCIENCES, INC.,
ADVANCED POLYMER COATINGS, LTD
f/k/a ADVANCED POLYMER COATINGS LLC,

        Defendants.

Civ. No. 08-389-LPS

---

David A. Jenkins, Esquire, of SMITH, KATZENSTEIN & JENKINS LLP, Wilmington, DE.

Bijan Amini, Esquire, of STORCH AMINI & MUNVES PC, New York, NY.

    Attorneys for Plaintiff.


Joel Friedlander, Esquire, of BOUCHARD MARGULES & FRIEDLANDER, P.A., Wilmington, DE.

Of Counsel: John M. Manos, Esquire, of JOHN M. MANOS CO., LPA, Cleveland, OH.

    Attorneys for Individual Defendants.


Richard H. Cross, Jr., Esquire and Tara M. DiRocco, Esquire, of CROSS & SIMON, LLC, Wilmington, DE.

Of Counsel: John M. Manos, Esquire, of JOHN M. MANOS CO., LPA, Cleveland, OH.

    Attorneys for Defendant Advanced Polymer Coatings, Inc.

---

## **MEMORANDUM OPINION**

October 25, 2012
Wilmington, Delaware

**STARK, U.S. District Judge:**

Pending before the Court are three motions: (1) a motion to dismiss filed by individual defendants Donald J. Keehan and Arlene Keehan (the "Individual Defendants" or "Keehans") (D.I. 68); (2) the Individual Defendants' motion for summary judgment (D.I. 153); and (3) the motion for summary judgment filed by Defendant Advanced Polymer Coating, Inc. ("APC") (D.I. 156). Plaintiff, Marnavi S.p.A., as agent for Jilmar Shipping, S.A. ("Plaintiff" or "Marnavi"), opposes the motions.

The Court heard argument on all three of the motions on June 27, 2011. (*See* Transcript of June 27, 2011 hearing (D.I. 176 and, hereinafter, "Tr.")) For the reasons set forth below, the Court will grant the Keehans' motion to dismiss, deny the Keehans' motion for summary judgment as moot, and grant the APC motion for summary judgment.

## I.    THE PARTIES AND OTHER PERTINENT INDIVIDUALS AND ENTITIES

Numerous related, and often similar-sounding, entities and individuals are involved in this case. A brief summary is provided below.

### A.    Marnavi S.p.A., as agent for Jilmar Shipping S.A.

Plaintiff Marnavi is an Italian corporation with its principal offices in Naples, Italy. (*See* D.I. 158-1; D.I. 1 ¶ 11) Marnavi is involved in the business of transporting foodstuffs and chemicals. (*See* D.I. 1 ¶ 11)

Jilmar Shipping S.A. is a Panamanian corporation. (*See* D.I. 158-1; D.I. 1 ¶ 12) Jilmar owned the shipping tanker the M/T Joran ("Joran"). (*See* D.I. 158-1; D.I. 1 ¶ 12) Marnavi is Jilmar's managing agent. (*See* D.I. 158-4 at 303; D.I. 1 ¶ 12)

1

### B. APS

Advanced Polymer Sciences, Inc. ("APS") was a Delaware corporation that had its principal place of business in Ohio. (*See* D.I. 155-8 at 1; D.I. 1 ¶ 13) APS was incorporated in 1986. (*See* D.I. 155-1 Ex. A at MARNAVI 00432-33) "Prior to being placed in receivership, APS did business throughout the world. Financing for its domestic and international operations was provided by Bank One, N.A." (D.I. 155-8 at 1)

### C. APC

Advanced Polymer Coatings, LLC ("APC LLC") was formed in Delaware on October 20, 1997, as a wholly-owned entity of APS. (*See* D.I. 69-3 ¶ 4; D.I. 124-9 at 2; D.I. 155 Ex. GG at MARNAVI00001)[1] Until May 13, 2001, APS remained the sole member of APC LLC. (*See* D.I. 69-3 ¶ 5) APC LLC functioned as a sales arm of APS, but it operated without capital and without significant assets. (*See* D.I. 69-3 ¶¶ 4-5) APC was "activated" on July 1, 2001 to take over APS's business. (*See, e.g.,* D.I. 124-5 Ex. 4 at 8-9, 45; D.I. 124-6 Ex. 4 at 122; D.I. 124-7 Ex. 5 at 61-62)

On November 26, 2002, a certificate of conversion was filed with the Delaware Secretary of State changing the name of APC LLC to "Advanced Polymer Coatings, Ltd." ("APC Ltd.") and converting APC LLC from a Delaware limited liability company into a Delaware corporation. (*See* D.I. 155 Ex. GG at MARNAVI00001)

In 2009, the shareholders of APC Ltd. – including individual defendants Donald and Arlene Keehan – authorized the creation of a new Ohio company, Ohio Advanced Polymer

---

[1]Defendant Arlene Keehan has testified regarding the 1997-98 timeframe: "We knew we needed – we had issues, these – basically product issues in the field and lawsuits, so we knew we needed to try to reinvent APS with APC and keep it alive." (D.I. 124-5 Ex. 4 at 14)

Coatings, Inc., and authorized the merger of APC Ltd. into the new Ohio entity, with the

surviving entity being an Ohio corporation called Advanced Polymer Coatings, Inc. ("APC").

*(See* D.I. 54-1 Exs. 1, 6-A; D.I. 158-5 Ex. L at KEEHAN00041-42; *see also* D.I. 58 at 7 n.6)

### D. GATT

Guaranteed Advanced Tank Technologies, Inc. ("GATT") is an Ohio limited liability

company. *(See* D.I. 158-1 Ex. A; D.I. 158-5 Ex. Y at 1) GATT was a subsidiary of APS. *(See*

D.I. 158-1 Ex. A; D.I. 158-5 Ex. Y at 1)

### E. Donald J. Keehan and Arlene Keehan

Defendant Donald J. Keehan[2] has been involved with APS, APC, and GATT in various

capacities. For example, he has served as chairman, vice president, and the director of research

for APS, as well as a shareholder, director, and president of APC Ltd. *(See, e.g.,* D.I. 69-3; D.I.

69-4; D.I. 69-6; D.I. 124-1; D.I. 124-7; D.I. 126 ¶ 3; D.I. 158-1 Ex. A)

Donald Keehan is married to co-defendant Arlene Keehan, who has also been involved

with the different entities in various capacities. Arlene Keehan has served as president and sole

shareholder of APS, as well as a shareholder and director of APC Ltd. *(See, e.g.,* D.I. 69-3; D.I.

69-6; D.I. 124-1)

### F. Keehan Children

Defendants Donald and Arlene Keehan have six children. *(See, e.g.,* D.I. 124-11) One of

their daughters, Denise Keehan, has served as Executive Vice President of APS; Executive Vice

President of Advanced Polymer Coatings LLC; Executive Vice President of Advanced Polymer

---

[2]While the caption of the Complaint recites "Donald *P.* Keehan," the text of the
Complaint correctly recites "Donald *J.* Keehan." The Court has made the appropriate correction
to the case caption.

Coatings Ltd.; and Executive Vice President of APC. (*See, e.g.,* D.I. 69-3) A son, David Keehan, has served as APC's marketing manager. (*See, e.g.,* D.I. 163-2 at 102; D.I. 163-3 at 28, 41-44; D.I. 163-4 at 122)

## II. THE COMPLAINT AND RELATED ACTION

Plaintiff filed its Complaint on June 25, 2008. (D.I. 1) The Complaint alleges that, on July 28, 1997, Marnavi entered into an agreement whereby Defendant APS would supply and supervise the application of a special coating, Siloxirane, to the cargo tanks of a tanker called the Joran. (*See id.* ¶¶ 1, 11, 47, 51) Marnavi further alleges that APS and the other Defendants "botched" the sealing job and, thereafter, pursued a strategy of corporate "shape-shifting" to avoid having to pay Marnavi for the damages that resulted. (*See, e.g., id.* ¶¶ 1, 3-5, 84-94, 117)

Plaintiff brings this action in support of its related petition to domesticate and enforce a foreign arbitration award concerning the Joran. Specifically, on the same date Plaintiff filed the instant action, Plaintiff also filed a petition to confirm a foreign arbitration award against Defendant APS. *See Marnavi SpA v. Advanced Polymer Sciences Inc.*, C.A. No. 08-388-SLR-LPS. That petition related to arbitration proceedings that had taken place in London. On July 15, 2002, the arbitrator had found it had jurisdiction over the parties' dispute and issued an interim award. (*See* C.A. No. 08-388, D.I. 3 ¶ 18) On February 4, 2003, the arbitrator issued a second interim award against APS; and, on November 11, 2005, the arbitrator issued a final arbitration award in favor of Marnavi. (*See* C.A. No. 08-388, D.I. 3 ¶¶ 18, 24-25, 29) Thereafter, in the related action, Plaintiff's motion for default judgment was granted by this Court and, on October 19, 2009, the final arbitration award was confirmed and reduced to judgment. (*See* C.A. No. 08-388, D.I. 26, 29)

4

The Complaint in the instant action contains five causes of action: Claim I for a declaratory judgment the "Keehan Companies"[3] are alter egos of one another and of the Keehans themselves; Claim II for a declaratory judgment that the transfer of assets from APS to APC resulted in a de facto merger of the two companies, pursuant to which APC assumed APS's liabilities; Claim III for a declaratory judgment that APC is the mere continuation of, and successor in interest to, APS, and therefore APC bears responsibility for APS's liabilities; Claim IV, a derivative claim for damages for waste and breach of fiduciary duty against the Keehans; and Claim V, for damages arising from the fraudulent transfer of assets from APS to APC and other Keehan Companies in a scheme to evade APS's obligations and liability to Marnavi. (*See* D.I. 1 ¶¶ 39, 136-184)

## III.   LEGAL STANDARDS

### A.   Motion to Dismiss for Lack of Personal Jurisdiction

Federal Rule of Civil Procedure 12(b)(2) directs the Court to dismiss a case when it lacks personal jurisdiction over the defendant. Determining the existence of personal jurisdiction generally requires a two-part analysis. First, the Court analyzes the long-arm statute of the state in which the Court is located. *See IMO Indus., Inc. v. Kiekert AG,* 155 F.3d 254, 259 (3d Cir. 1998). Next, the Court must determine whether exercising jurisdiction over the defendant in this state comports with the Due Process Clause of the Constitution. *See id.* Due Process is satisfied if the Court finds the existence of "minimum contacts" between the non-resident defendant and

---

[3]The Complaint defines the "Keehan Companies" as GATT, GATT Int'l, 951 Realty, Ascus, Chemline Europe, Chemline Mexico, MarineLine Turkey, and MarineLine China, Ltd. (*See* D.I. 1 ¶ 39; *see also id.* ¶¶ 24, 26, 28, 30, 35, 37) Nonetheless, the Court understands Plaintiff to be seeking declaratory relief that also includes APS and APC, notwithstanding their exclusion from the Complaint's express definition.

5

the forum state, "such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (internal quotation marks omitted).

Once a jurisdictional defense has been raised, the plaintiff bears the burden of establishing, by a preponderance of the evidence and with reasonable particularity, the existence of sufficient minimum contacts between the defendant and the forum to support jurisdiction. *See Provident Nat'l Bank v. Cal. Fed. Sav. & Loan Ass'n*, 819 F.2d 434, 437 (3d Cir. 1987); *Time Share Vacation Club v. Atl. Resorts, Ltd.*, 735 F.2d 61, 66 (3d Cir. 1984). To meet this burden, the plaintiff must produce "sworn affidavits or other competent evidence," since a Rule 12(b)(2) motion "requires resolution of factual issues outside the pleadings." *Time Share*, 735 F.2d at 67 n.9; *see also Philips Elec. N. Am. Corp. v. Contec Corp.*, 2004 WL 503602, at \*3 (D. Del. Mar. 11, 2004) ("After discovery has begun, the plaintiff must sustain [its] burden by establishing jurisdictional facts through sworn affidavits or other competent evidence.").

If no evidentiary hearing has been held, a plaintiff "need only establish a prima facie case of personal jurisdiction." *O'Connor v. Sandy Lane Hotel Co., Ltd.*, 496 F.3d 312, 316 (3d Cir. 2007). A plaintiff "presents a prima facie case for the exercise of personal jurisdiction by establishing with reasonable particularity sufficient contacts between the defendant and the forum state." *Mellon Bank (E.) PSFS, Nat'l Ass'n v. Farino*, 960 F.2d 1217, 1223 (3d Cir. 1992). On a motion to dismiss for lack of personal jurisdiction, "the plaintiff is entitled to have its allegations taken as true and all factual disputes drawn in its favor." *Miller Yacht Sales, Inc. v. Smith*, 384 F.3d 93, 97 (3d Cir. 2004). In considering a motion to dismiss for lack of personal jurisdiction pursuant to Rule 12(b)(2), "courts may rely upon matter outside the pleadings in

6

determining jurisdictional facts." *Water & Sand Int'l Capital, Ltd. v. Capacitive Deionization Tech. Sys., Inc.*, 563 F. Supp. 2d 278, 284 (D.D.C. 2008). A court is always free to revisit the issue of personal jurisdiction if it later is revealed that the facts alleged in support of jurisdiction are in dispute. *See Metcalfe v. Renaissance Marine, Inc.*, 566 F.3d 324, 331 (3d Cir. 2009).

## B. Motion for Summary Judgment

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the burden of demonstrating the absence of a genuine issue of material fact. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 n.10 (1986). A party asserting that a fact cannot be – or, alternatively, is – genuinely disputed must support its contention either by citing to "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for the purposes of the motions only), admissions, interrogatory answers, or other materials," or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A) & (B). If the moving party has carried its burden, the nonmovant must then "come forward with specific facts showing that there is a *genuine issue for trial*." *Matsushita*, 475 U.S. at 587 (internal quotation marks omitted). The Court will "draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000).

To defeat a motion for summary judgment, the non-moving party must "do more than

simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475
U.S. at 586-87; *see also Podobnik v. U.S. Postal Serv.*, 409 F.3d 584, 594 (3d Cir. 2005) (stating
party opposing summary judgment "must present more than just bare assertions, conclusory
allegations or suspicions to show the existence of a genuine issue") (internal quotation marks
omitted). However, the "mere existence of some alleged factual dispute between the parties will
not defeat an otherwise properly supported motion for summary judgment;" a factual dispute is
genuine only where "the evidence is such that a reasonable jury could return a verdict for the
nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 411 U.S. 242, 247-48 (1986). "If the
evidence is merely colorable, or is not significantly probative, summary judgment may be
granted." *Id.* at 249-50 (internal citations omitted); *see also Celotex Corp. v. Catrett*, 411 U.S.
317, 322 (1986) (stating entry of summary judgment is mandated "against a party who fails to
make a showing sufficient to establish the existence of an element essential to that party's case,
and on which that party will bear the burden of proof at trial").

## IV.  MOTION TO DISMISS: LACK OF PERSONAL JURISDICTION

The Individual Defendants seek dismissal of the Complaint pursuant to Federal Rule of
Civil Procedure 12(b)(2), contending that this Court lacks personal jurisdiction over them. (*See*
D.I. 68; D.I. 69; D.I. 96; D.I. 125; D.I. 130) As the Plaintiff, Marnavi bears the burden of
adducing facts which, at a minimum, "establish[] with reasonable particularity" that personal
jurisdiction exists over the Individual Defendants. *Provident Nat'l Bank*, 819 F.2d at 437.

After initial consideration of the Keehans' motion to dismiss, the Court afforded Plaintiff
the opportunity to take jurisdictional discovery, deferring a ruling on the merits of the motion
until after such discovery was completed. (D.I. 106) Following completion of jurisdictional

8

discovery, the parties submitted supplemental briefing on personal jurisdiction. (D.I. 123; D.I.

125; D.I. 130; D.I. 131) "[H]aving permitted jurisdictional discovery the Court must make

factual findings based on the record the parties have created." (D.I. 131 at 1; *see also* D.I. 123 at

1)

In attempting to meet its burden, Marnavi relies on Delaware's director consent statute

and Delaware's long-arm statute. (*See generally* D.I. 85; D.I. 123; D.I. 131) Plaintiff contends

that, at a minimum, the Keehans caused tortious injury to APS in Delaware by transferring APS's

assets to APC in order to avoid creditors. (*See, e.g.,* D.I. 1 ¶ 84)

Defendants challenge both of Plaintiff's asserted bases for personal jurisdiction, arguing:

> First, there is no personal jurisdiction over the Keehans under
> Delaware's director-service statute, 10 Del. C. § 3114, and no
> derivative claim is stated against them for breach of fiduciary duty,
> because APS was "otherwise dissolved" for purposes of 8 Del. C.
> § 278 on March 1, 2004, more than three years prior to the filing of
> suit, and thus in June 2008, APS no longer had the capacity to sue
> the Keehans or to be sued by Marnavi as a nominal defendant for
> breach of fiduciary duty. Second, there is no basis for personal
> jurisdiction against the Keehans under Delaware's long-arm
> statute, 10 Del. C. § 3104, because no act in Delaware was integral
> to any alleged wrongdoing by the Keehans.

(D.I. 154 at 1-2) (emphasis omitted)[4]

---

[4]In their motion to dismiss, the Keehans originally asserted that dismissal was also
appropriate based upon insufficiency of service of process, pursuant to Federal Rule of Civil
Procedure 12(b)(5). (*See* D.I. 68; D.I. 69 at 1-2, 7) The Keehans later withdrew their challenge
to adequacy of service of process. (*See* D.I. 125 at 1 n.1) The Keehans also cited Federal Rule of
Civil Procedure 12(b)(6). To the extent the Keehans are still seeking dismissal for failure to state
a claim on which relief may be granted, the Court believes it has addressed the bases for such
relief in connection with the 12(b)(2) portion of the motion to dismiss and/or in connection with
the other pending motions.

9

## A. Delaware's Director Consent Statute

Delaware's director consent statute, 10 Del. C. § 3114, provides a basis for exercising

personal jurisdiction over a director of a Delaware corporation "for acts performed in his capacity

as a director." *Ryan v. Gifford*, 935 A.2d 258, 269 (Del. Ch. 2007). "[I]f jurisdiction attaches at

all under the statute, the nonresident is before the Court for any and all relief that might be

necessary to do justice between the parties by virtue of the fact that the jurisdiction conveyed by

the statute is in personam jurisdiction." *Cornerstone Techs., LLC v. Conrad*, 2003 WL 1787959,

at *13 n.44 (Del. Ch. Mar. 31, 2003) (internal quotation marks omitted).

The Individual Defendants contend that Section 3114 fails to provide a basis for personal

jurisdiction over them because APS had been dissolved more than three years prior to the filing

of this suit. For this position, the Keehans rely on 8 Del. C. § 278, which provides:

> All corporations, whether they expire by their own limitation or are
> *otherwise dissolved*, shall nevertheless be continued, for the term
> of 3 years from such expiration or dissolution or for such longer
> period as the Court of Chancery shall in its discretion direct, bodies
> corporate for the purpose of prosecuting and defending suits,
> whether civil, criminal or administrative, by or against them, and
> of enabling them gradually to settle and close their business, to
> dispose of and convey their property, to discharge their liabilities
> and to distribute to their stockholders any remaining assets, but not
> for the purpose of continuing the business for which the
> corporation was organized. *With respect to any action, suit or*
> *proceeding begun by or against the corporation either prior to or*
> *within 3 years after the date of its expiration or dissolution, the*
> *action shall not abate by reason of the dissolution of the*
> *corporation; the corporation shall, solely for the purpose of such*
> *action, suit or proceeding, be continued as a body corporate*
> *beyond the 3-year period and until any judgments, orders or*
> *decrees therein shall be fully executed*, without the necessity for
> any special direction to that effect by the Court of Chancery.

(Emphasis added) *See also City Investing Co. Liquidating Trust v. Cont'l Cas. Co.*, 624 A.2d

10

1191, 1195 (Del. 1993) ("A further period of implicit corporate existence, of indefinite duration, is imparted by the statutory directive that *no action for or against the corporation shall abate by reason of the dissolution of the corporation, the corporation's existence being extended until the execution of all judgments or decrees affecting the corporation.*") (emphasis added).

Actions against a dissolved corporation must be filed during the three years after dissolution in order to be permitted to continue after the three-year date. *See In re Dow Chem. Int'l Inc.*, 2008 WL 4603580, at *1 (Del. Ch. Oct. 14, 2008) ("Once the three-year period has expired, no new suits can be brought against the corporation. Although § 278 grants the Court of Chancery discretion to continue the corporate existence for more than three years after dissolution, such discretion allows continuance of the corporate existence only for the purpose of resolving *pending* litigation.").

The Individual Defendants contend that, consistent with Section 278, APS was "otherwise dissolved" on March 1, 2004. *(See* D.I. 96 at 6-8) Therefore, in their view, a suit against APS had to be initiated no later than March 1, 2007. Since the Complaint was not filed until June 2008, it cannot be maintained against APS, and, therefore, personal jurisdiction cannot be exercised over the Keehans by virtue of their role as directors or officers of the dissolved APS. *(See* D.I. 69 at 11)

On the record before the Court, a reasonable factfinder could only conclude that the Keehans are correct that APS was dissolved on March 1, 2004. On that date, the Delaware Secretary of State rescinded APS's corporate charter for non-payment of franchise taxes. *(See* D.I. 155-9 Ex. CC; *see also* D.I. 69-6 Ex. A ¶ 11; *id.* Ex. B)

Marnavi responds by contending that the instant 2008 action is "effectively a continuation

11

of the arbitration proceeding commenced in 2001, based on the same nucleus of facts, due to the Keehans' ongoing evasion of their obligations to Marnavi. The final London arbitration award was issued in November 2005, well within the three-year window permitted by 8 Del. C. § 278." (D.I. 85 at 3; *see also* D.I. 158-1 Ex. B-2 (copy of 11/11/05 Final Arbitration Award on Quantum)) Further, according to Marnavi, because the arbitration "award has yet to be satisfied . . . APS'[s] corporate existence is automatically extended by statute until full execution of any judgment is executed against it including the default judgment to be entered against it in this action." (D.I. 85 at 16 (citing *City Investing Co. Liquidating Trust*, 624 A.2d at 1195))

The Court agrees with the Keehans, however, that this case is not a continuation of the arbitration proceeding but, instead, is a new – and untimely – action. (*See* Tr. at 9) (defense counsel arguing, "This case is not connected in any way to the arbitration. It is a purported derivative lawsuit with fraudulent conveyance claims based on a whole other series of facts that are years after the facts at issue in the arbitration with new claims seeking relief on behalf of the company.") The instant action is a new suit filed against (among others) APS as a nominal defendant, purporting to assert new claims of waste and breach of fiduciary duty against new parties (the Keehans) on behalf of APS, on subject matters that were not at issue in the London arbitration.[5]

Marnavi also insists it is "law of the case" that "APS has not been dissolved," that APS "is amenable to suit," and that APS, the Keehans, and the other defendants are "alter egos" of

---

[5]There is no genuine dispute of material fact as to how the allegations considered in the arbitration compare to those asserted here, as both sets of allegations may be divined from the filings in the respective proceedings. (*Compare, e.g.*, D.I. 1 *with* D.I. 158-1 Exs. B-1, B-2; D.I. 158-9 Exs. II & JJ)

12

each other. (D.I. 85 at 1-2; *see also id.* at 11-14) However, as the Keehans point out, the "law of the case" doctrine does not apply to default judgments – which is how the related action terminated. (D.I. 96 at 3-6 (citing, *e.g., U.S. v. Hatter*, 532 U.S. 557, 566 (2001))

Hence, Delaware's director consent statute does not provide a basis for this Court to exercise personal jurisdiction over the Individual Defendants.

## B. Delaware's Long-Arm Statute

Delaware's long-arm statute, 10 Del. C. § 3104(c), provides in pertinent part that a Delaware court has personal jurisdiction over a non-resident defendant only when that non-resident defendant, either

> in person or through an agent:
>
> > (1) Transacts any business or performs any character of work or service in the State; [or]
>
> . . .
>
> > (3) Causes tortious injury in the State by an act or omission in this State . . . .

Delaware's long-arm statute has been construed "liberally so as to provide jurisdiction to the maximum extent possible. In fact, the only limit placed on § 3104 is that it remain within the constraints of the Due Process Clause." *Boone v. Oy Partek Ab*, 724 A.2d 1150, 1157 (Del. Super. Ct. 1997) (internal citations omitted), *aff'd*, 707 A.2d 765 (Del. 1998) (table); *see also Hercules, Inc. v. Leu Trust and Banking (Bahamas) Ltd.*, 611 A.2d 476, 480 (Del. 1992).

Subsections (c)(1) and (c)(3) – on which Plaintiff relies – confer "specific" jurisdiction over a non-resident defendant. *See, e.g., LaNuova D&B, S.p.A. v. Bowe Co., Inc.*, 513 A.2d 764, 768 (Del. 1986); *Jeffreys v. Exten*, 784 F. Supp. 146, 151 (D. Del. 1992). "Specific jurisdiction

13

is at issue when the plaintiff's claims arise out of acts or omissions that take place in Delaware."

*Boone*, 724 A.2d at 1155.

The Individual Defendants contend that Plaintiff has failed to meet its burden of demonstrating specific jurisdiction pursuant to Section 3104(c) because no act integral to the claims pled in the Complaint occurred in Delaware. Specifically:

> No defendant has transacted business in Delaware that gives rise to a claim of wrongdoing. No alleged fraudulent transfer occurred in Delaware. The 2001 recapitalization transaction took place in Ohio, as did the transactions in 2003-2004, which occurred under the supervision of the Ohio Court of Common Pleas. A claim against the Individual Defendants for their role in those transactions cannot be pursued in Delaware.

(D.I. 69 at 14-15) In the Keehans' view, only three acts are alleged to have occurred in Delaware, none of which were integral to Plaintiff's claims. They contend: "[t]he only alleged acts in Delaware by anyone are the incorporation of APS in 1986, the formation of Advanced Polymer Coatings LLC ('APC LLC') as a wholly-owned entity of APS in 1997, and the conversion of APC LLC into a Delaware corporation, APC Ltd., in 2002." (*Id.* at 2; *see also id.* at 12)

Indeed, Plaintiff does allege that APC was "formed in Delaware and activated to avoid creditors" and, further, that "APS was merged into APC in Delaware for inadequate or no consideration." (D.I. 131 at 2) To Plaintiff, then, "at a minimum, the Keehans caused tortious injury to APS in the State of Delaware." (*Id.*) The Court concludes, however, that the record does not contain sufficient evidence from which a reasonable factfinder could agree with Plaintiff.

First, the incorporation of APS in Delaware in 1986 predates the transaction between

14

APS and Marnavi by more than a decade. Mere incorporation in Delaware does not give rise to specific jurisdiction. *See, e.g., Global Recycling Solutions, LLC v. Greenstar N.J., LLC*, 2011 WL 4501165, at \*11 (D. Del. Sept. 28, 2011) ("[Parent defendant company's] admitted incorporation of [subsidiary defendant company] is insufficient under Delaware law to provide a basis for finding specific jurisdiction since that act of incorporation is unrelated to this dispute."). The lengthy gap in time between the incorporation in 1986 and the alleged misconduct in 1997 precludes, under the circumstances here, a conclusion that the incorporation of APS was integral to the claims being pursued by Marnavi, notwithstanding Arlene Keehan's testimony that APS was purposefully incorporated in Delaware. (D.I. 124-5 at 105) Moreover, the only action APS took in Delaware was to form APC LLC in 1997. (*See, e.g.,* D.I. 124-3 at 58-59; D.I. 124-21 at 3)

Second, APS's formation of APC LLC as its subsidiary in 1997 was not integral to Plaintiff's claims. It is true that both Donald and Arlene Keehan acknowledged that the decision to incorporate APS in Delaware was deliberate. (*See* D.I. 124-2 at 6-7; D.I. 124-5 at 105; D.I. 124-21, Ans. 1 at 3 (Donald Keehan stating: "Based upon conversations I had with investment firms, investors preferred Delaware companies because of the well developed body of law on corporate governance. It was expected that any investor would want to exit their investment through an initial public offering. APC was formed in Delaware in expectation of a future IPO."); *see also* D.I. 69-3 (Denise Keehan explaining business rationale for formation of APC LLC as wholly-owned entity of APS in October 20, 1997)) Yet the facts do not support a finding that APC's formation, on October 20, 1997, was integral to the claims in the Complaint. When the contract to coat the Joran was executed by APS in June 1997, it was believed the contract

15

would be profitable; damage to the Joran was not discovered until February 1999. (*See, e.g.,* D.I. 124-1 at 2) It follows that the formation of APC was not integral to Plaintiff's claims.

Likewise, the conversion of APC LLC into APC Ltd., a Delaware corporation, in 2002 was not integral to the claims in the Complaint. The conversion is of no legal significance as the liabilities of APC LLC transferred to APC Ltd. (*See* D.I. 69 at 13; *see also* D.I. 96 at 15 ("That conversion had no impact on creditors by operation of law.")) Also, the evidence of record suggests that the reason for the conversion had to do with tax planning. (*See* D.I. 69-3 ¶ 8)

The Keehans further assert – including in sworn declarations – that "[t]he Individual Defendants have never been to Delaware, transacted any business in Delaware, leased or owned property in Delaware, maintained bank accounts in Delaware or filed tax returns in Delaware. Nor have they derived income from Delaware or contracted to act as a surety for, or on, any person, property, risk, contract, obligation or agreement located, executed or to be performed within Delaware." (D.I. 69 at 2-3; *see also* D.I. 69-1; D.I. 69-2; D.I. 125) To the extent Plaintiff challenges some of these asserted facts, the disputes raised thereby are not genuine and/or are not material.

For example, Plaintiff points to evidence that Donald and Arlene Keehan are listed on APS's 2001 tax return as having received compensation as officers (in a total amount exceeding $100,000). (*See* D.I. 124-12 Ex. 10; *see also* D.I. 124-5 Ex. 4 at 114-15; D.I. 124-21 Ex. 19 (Donald Keehan's Response to Plaintiff's Jurisdictional Interrogatory 4)) On APC's 2001 and 2002 tax returns, Donald and Arlene Keehan are listed as 50% owners and are reported to have received compensation as officers in amounts exceeding $150,000 altogether. (*See* D.I. 165-14 Ex. 35; D.I. 166 Ex. 36; *see also* D.I. 173-2 Ex. B) Even assuming the Keehans did receive all of

16

this reported income,[6] "the passive receipt of income by defendants from debt and equity securities of Delaware companies does not constitute sufficient contacts with the state to support a finding of minimum contacts." *Hart Holding Co. Inc. v. Drexel Burnham Lambert Inc.*, 1992 WL 127567, at *11 (Del. Ch. May 28, 1992). Additionally, "[i]t is well established that mere ownership or direction of a corporate entity, without more, is not sufficient to establish that the corporate form should be disregarded. In order for the corporate form to be disregarded under the alter ego doctrine, the plaintiff must show some fraud, injustice, or inequity in the use of the corporate form." *CNH America LLC v. Kinzenbaw*, 2009 WL 3737653, at *1 (D. Del. Nov. 9, 2009) (internal quotation marks omitted).

Relatedly, Plaintiff asserts that each of the defendants is the alter ego of one another. "Under the alter ego theory of personal jurisdiction, the contacts of an entity with a particular forum can be attributed to another person or entity if the entity having the forum contacts is the mere alter ego of such other person or entity. Thus, the alter ego theory of jurisdiction requires a finding similar to piercing the corporate veil." *LivePerson, Inc. v. NextCard, LLC*, 2009 WL 742617, at *4 (D. Del. Mar. 20, 2009) (internal quotation marks and citation omitted).

> [A]n alter ego analysis must start with an examination of factors which reveal how the corporation operates and the particular defendant's relationship to that operation. These factors include whether the corporation was adequately capitalized for the corporate undertaking; whether the corporation was solvent; whether dividends were paid, corporate records kept, officers and

---

[6]They contend they did not. (*See, e.g.*, D.I. 124-5 at 59 (Arlene Keehan testifying that "part of [her] salary was charged to APC, even though [she] didn't receive a check. It was strictly a bookkeeping procedure."); *id.* at 60 ("APC started filing income tax in 2001, and I think on that income tax there's some amount of money that claims Don – that Don and I were being charged to the company, and it's – although we never received a check from – we only received a check from . . . APS."))

17

> directors functions properly, and other corporate formalities were
> observed; whether the dominant shareholder siphoned corporate
> funds; and whether, in general, the corporation simply functioned
> as a facade for the dominant shareholder.

*Maloney-Refaie v. Bridge at School, Inc.*, 958 A.2d 871, 881 (Del. Ch. 2008) (internal quotation

marks omitted); *see also CNH America LLC*, 2009 WL 3737653, at *1 (citing same factors in

determining whether to pierce corporate veil).

"In addition, a court may disregard the corporate form in the interest of justice, when such

matters as fraud, contravention of law or contract, public wrong, or where equitable

considerations among members of the corporation . . . are involved." *Maloney-Refaie*, 958 A.2d

at 881 (internal quotation marks, footnote, and citations omitted); *see also Quantum Loyalty Sys.,*

*Inc. v. TPG Rewards, Inc.*, 2009 WL 5184350, at *7 (D. Del. Dec. 23, 2009) ("The alter ego

theory requires (1) that the corporation and its shareholders operated as a single economic entity,

and (2) that an overall element of injustice or unfairness is present.") (internal quotation marks

omitted).

Plaintiff has failed to prove the elements required for a finding that one person or entity is

an alter ego for another. Under Delaware law, "[d]isregard of the corporate entity is appropriate

only in exceptional circumstances." *Mobil Oil Corp. v. Linear Films, Inc.*, 718 F. Supp. 260, 270

(D. Del. 1989). In particular, "[t]he law requires that fraud or injustice be found in the

defendants' use of the corporate form." *Id.* at 269; *see also EBG Holdings LLC v. Vredezicht's*

*Gravenhage 109 B.V.*, 2008 WL 4057745, at *12 (Del. Ch. Sept. 2, 2008) ("[T]he requisite

element of fraud under the alter ego theory must come from an inequitable use of the corporate

form itself as a sham, and not from the underlying claim."). The record does not support a

18

finding that any of the transactions Plaintiff points to amount to fraud in Defendants' use of

corporate forms.[7]

## C.   Personal Jurisdiction Conclusion

In sum, the Court finds that, even after permitting jurisdictional discovery, Plaintiff has

failed to meet its burden of establishing that this Court may exercise personal jurisdiction over

the Keehans. Accordingly, the Keehans' motion to dismiss for lack of personal jurisdiction will

be granted.

## V.   KEEHANS' MOTION FOR SUMMARY JUDGMENT

The Keehans move for summary judgment as to all claims asserted against them. (*See*

D.I. 154 at 11) The Keehans argue they are entitled to summary judgment because: (1) the

statute of limitations lapsed – without any tolling – on any claims for breach of fiduciary duty,

waste, and fraudulent conveyance; (2) the approval by the Lorain County, Ohio Court of

Common Pleas of the sale of certain APS assets on February 26, 2004 bars the breach of

fiduciary duty and fraudulent conveyance claims as to such 2004 transactions, and is not subject

to collateral attack; and (3) without any viable claims of wrongdoing against the Keehans with

respect to the transfer of APS assets, there is no basis for holding them liable as alter egos of

---

[7]There is conflicting evidence in the record with respect to some factors typically
involved in an alter ego analysis, such as whether corporate formalities were ignored. *Compare,
e.g.*, D.I. 162-1 at 102 (Denise Keehan stating APC had annual meetings) *with* D.I. 125-1 at 5-6
(Donald Keehan saying there were no annual meetings of APC, LLC), *and* D.I. 124-1 at 1, D.I.
124-3 at 91, D.I. 124-5 at 62 (statements that Arlene Keehan was always President of APS) *with*
D.I. 124-3 at 23, D.I. 124-5 at 62, D.I. 124-6 at 131, D.I. 124-7 at 28-29 (statements that Donald
Keehan acted as president of APS at times). However, the Court is unpersuaded by Plaintiff's
suggestion that the opinion of former Chancellor William B. Chandler, III, in *Xperex Corp. v.
Viasystems Tech. Corp., LLC*, 2004 WL 3053649 (Del. Ch. July 22, 2004), supports a conclusion
that the "murkiness" of the record warrants, as a matter of equity, disregarding the corporate
separateness of Defendants. (*See* D.I. 161 at 15-16; D.I. 160 at 11-12)

19

APC or APS. (*See id.* at 2-3; D.I. 174 at 1)

Although the Court has granted the Keehans' motion to dismiss for lack of personal jurisdiction, in the interests of completeness the Court now explains why it would also grant summary judgment to the Keehans.

## A.    Statute of Limitations

The Keehans argue that the statute of limitations expired on all claims of breach of fiduciary duty, waste, and fraudulent conveyance prior to the filing of the Complaint. (*See* D.I. 154 at 3, 11-12) Specifically, the Keehans contend that the alleged wrongs of which Plaintiff complains occurred no later than 2004, when an Ohio court entered judgment against APS. (*See id.*) Additionally, they continue, there is no basis to toll the statute of limitations. (*Id.*) Therefore, given the three-year statute of limitations, Plaintiff's claims became untimely no later than February 2007, and Plaintiff's June 2008 Complaint is barred by the statute of limitations. (*Id.*) The Court agrees.

The record, taken in the light most favorable to Plaintiff, establishes the following. On October 18, 2002, John Manos, an attorney for the Keehans and/or the Keehan entities, sent a letter to Plaintiff. (*See, e.g.,* D.I. 162-7 at 81-83; D.I. 158-1 at 1-2) On June 28, 2004, Mr. Manos sent Plaintiff another letter. (*See, e.g.,* D.I. 162-7 at 80-81, 179, 210; D.I. 158-1 at 1-2; D.I. 158-5) Together, the two Manos letters advised Marnavi that APS had been placed into judicial receivership in the "Court of Common Pleas, Lorain County, Ohio, Case No. 02-CV-133348" and that its assets had been liquidated in a judicially approved sale for the benefit of APS's secured creditor, Bank One. (*See* D.I. 96-2 Exs. A & B; D.I. 158-1 Ex. B; D.I. 158-5; D.I. 158-9 Ex. EE) Hence, by June 2004, Plaintiff had actual notice of the docket number

of the Ohio receivership proceedings, as well as the name of the Court and the name of the judge involved. Plaintiff further knew that what had occurred was a liquidation of all the assets of APS. *See generally Norman v. Elkin,* 726 F. Supp. 2d 464, 469-70 (D. Del. 2010) (holding party can be charged with inquiry notice of alleged breach based on publicly-available information and letter from litigation adversary) The materials Marnavi eventually reviewed in deciding to file its June 2008 Complaint – the portions of the Ohio receivership record (*see* D.I. 158-9 Exs. GG, HH & II) – were all publicly available from 2004 and could have been reviewed much sooner.

Marnavi's representative, Claudio Pesce, had been aware of problems with APS from at least the time that he received Mr. Manos' June 2004 letter. Mr. Pesce testified in deposition:

> Q. But didn't you have information, didn't Marnavi have information well before 2005 that [APS] had gone out of business?
>
> A. You mean did we receive a letter from their solicitors saying something like that? Yes. But *that was deceiving*, could have been everything. Because on the other hand, we had people there on the window showing themself, selling MarineLine, coating vessels around the world. . . . MarineLine was there, that was the product.
>
> . . .
>
> We had received a [June 28, 2004] letter from the lawyers, I think it was Mr. Manos, saying that they were filing something like receivership or something . . . But it was absolutely meaningless to us. I saw – personally I thought it was a *deceiving maneuver just to stop us asking and going ahead*. Because on the other side Donald Keehan was still working, present his product, selling his products, so there was a continuity there. . . .

(D.I. 155-3 Ex. H at 77-79) (emphasis added)

21

On this record, the Court concludes that a reasonable factfinder would have to find that the exercise of reasonable prudence required Marnavi to do more – including examining the publicly available information filed in the Ohio court – so that it could have brought its claims no later than February 2007. (*See* Tr. at 23-24 (defense counsel arguing, "So when a person of prudence, if you have a claim against APS and you are told that all the assets have been sold to the secured creditor and you know there is an entity APC, there is industry literature about APC out there and you think the same person is running the company, so you think there has been an affiliated transaction in some way, you look into it.")) Mr. Pesce's view of the Manos letter as "deceiving" confirms that he perceived – or, at a minimum, a person exercising reasonable prudence would have perceived – a problem that required investigation.[8]

Plaintiff had inquiry notice of its claims by June 2004. Therefore, the statute of limitations was running and expired before the Complaint was filed in 2008. Applying this analysis to the specific claims in the Complaint leads to the conclusion that summary judgment for the Keehans is warranted.

With respect to Plaintiff's fraudulent conveyance claims, the statute of limitations, pursuant to 6 Del. C. § 1309, is "4 years after the transfer was made or the obligation was incurred or, if later, within 1 year after the transfer or obligation was or could reasonably have

---

[8]Mr. Pesce testified that he believed, in and around July 2004, that APS and APC were the same entity. (*See, e.g.*, D.I. 162-7 at 212 ("We thought they were under the same control. Because the people controlling them were the same. They were claiming continuation in their advertisement and publications. So there was no doubt that who owned APS, owned APC and APC was carrying forward of the business made by APS.")) The Court, of course, accepts this testimony as true. While Marnavi's confusion renders the Court's decision unfortunate, it does not wipe away the evidence which has caused the Court to conclude that Plaintiff failed to exercise reasonable diligence after June 2004.

been discovered by the claimant." Here, no challenged transfer occurred on or after June 25, 2004, i.e., four years prior to the filing of the Complaint. Moreover, for the reasons explained above, the challenged transfers of assets from APS were or reasonably could have been discovered by Plaintiff within one year of receipt of Attorney Manos's letter of June 2004. Accordingly, Plaintiff's June 2008 Complaint was too late.

With respect to Plaintiff's claim for breach of fiduciary duty, the statute of limitations is three years. *See In re Dean Witter P'ship Litig.*, 1998 WL 442456, at *4 (Del. Ch. July 17, 1998). However, the statute is tolled until the time Plaintiff knew or should have known – through the exercise of reasonable diligence – of the breach. "[T]he statute will begin to run only upon the discovery of facts constituting the basis of the cause of action or the existence of facts sufficient to put a person of ordinary intelligence and prudence on inquiry which, if pursued, would lead to the discovery of such facts." *Wal-Mart Stores, Inc. v. AIG Life Ins. Co.*, 860 A.2d 312, 319 (Del. 2004) (internal quotation marks and emphasis omitted). No alleged breach of fiduciary duty occurred within three years of the June 2008 filing of the Complaint. Nor was the statute tolled because, as already explained, the exercise of reasonable diligence following receipt of Mr. Manos's June 2004 letter would have led to discovery of the facts underlying Plaintiff's claim.

The statute of limitations for Plaintiff's waste claim is also three years from the date the claim arose or the date from which, exercising reasonable diligence, the facts giving rise to the claim could have been discovered. *See, e.g., In re Direct Response Media, Inc.*, 466 B.R. 626, 657 (Bankr. D. Del. 2012) ("As with the breach of fiduciary duty claims, Delaware has a three-year statute of limitations on corporate waste . . . claims."); *see also* 10 Del. C. § 8106

23

(providing three-year statute of limitations). Hence, for the same reasons given above, Plaintiff's claim for waste is barred by the statute of limitations.

Accordingly, if the Court could exercise personal jurisdiction over the Individual Defendants, it would grant summary judgment to the Individual Defendants on statute of limitations grounds.

## B. Collateral Attack

The Individual Defendants would also be entitled to summary judgment by virtue of the effect of the Ohio court judgment, as Plaintiff's claims amount to an improper collateral attack on that judgment. (*See* D.I. 154 at 3)

On November 26, 2002, Bank One filed a complaint against APS and the Keehans in the Court of Common Pleas, Lorain County, Ohio. (*See* D.I. 154 at 3-4) APS and the Keehans confessed judgment. (*See* D.I. 155-8 Ex. BB) In December 2002, APS was placed in judicial receivership in Lorain County, Ohio. (*See* D.I. 155-8 at MARNAVI00731) In January 2003, the Ohio court granted Bank One's motion for appointment of a receiver. (*See* D.I. 155-8 at MARNAVI00734) On February 6, 2004, the Ohio court approved the following transactions: APC purchased APS's physical assets for $500,000; and the Keehans purchased APS's intangible assets (with the exception of one legal action) for $100,000, including "[a]ll choses in action, past, pending and prospective, subject to defenses and counterclaims which are expressly disavowed by Purchasers." (D.I. 96-2 Ex. C; *see also* D.I. 155-8 Ex. BB at MARNAVI00736) The Ohio court found the purchase price for the sale of APS's assets to be "fair and reasonable." (D.I. 155-8 Ex. BB at MARNAVI00736)

Under Ohio law, "collateral or indirect attacks are disfavored and . . . will succeed only in

24

certain very limited situations." *Ohio Pyro, Inc. v. Ohio Dep't of Commerce*, 875 N.E.2d 550, 556 (Ohio 2007). The "two principal circumstances [are] when the issuing court lacked jurisdiction or when the order was the product of fraud (or of conduct in the nature of fraud)." *Id.* On the basis of the record before the Court, taking the evidence in the light most favorable to Plaintiff, no reasonable factfinder could conclude that the Ohio court lacked jurisdiction or its order was the product of fraud.[9] Nor has Plaintiff identified any authority for its suggestion that, as a creditor, it was entitled to formal notice of the Ohio receivership (notice which Plaintiff was not provided). (*See* Tr. at 74 (Plaintiff's counsel: "I don't know whether he was entitled to notice or not."))

Accordingly, if the Court could exercise personal jurisdiction, it would grant summary judgment to the Keehans due to the fact that Plaintiff's claims constitute an impermissible collateral attack on the judgment entered by the Ohio court.[10]

## C.    Alter Ego

For reasons already explained in connection with the jurisdictional analysis above, the Court finds that the record does not contain evidence from which a reasonable factfinder could conclude that the Individual Defendants and/or the Keehan entities are alter egos of one another.

---

[9]Plaintiff has likewise failed to demonstrate that "extraordinary circumstances" are present that justify reopening the judgment of another court. *See* Fed. R. Civ. P. 60(b)(6).

[10]The Keehans further contend that the Ohio judgment "bars Marnavi's purported derivative claim for breach of fiduciary duty by vesting in the Keehans, and divesting APS or any creditor of APS, the power to assert such a claim," because these are intangible assets of APS that were transferred as a result of the transactions authorized by the Ohio court. (D.I. 154 at 15; *see also* D.I. 96-2 Ex. C) Plaintiff disagrees, on the merits and also based on its belief that the Keehans waited too long to raise this argument. (*See* D.I. 123 at 1) The Court has decided that there is no reason to resolve this issue.

25

Hence, again, if the Court could exercise personal jurisdiction over the Keehans, it would grant the Keehans' motion for summary judgment.

## VI. APC'S MOTION FOR SUMMARY JUDGMENT

APC argues that it has no successor liability for the warranty or tort obligations of APS because the asset transfers did not result in a de facto merger of APS into APC, nor is APC the mere continuation, or alter ego, of APS. (*See* D.I. 157 at 2) APC also contends that Plaintiff's fraudulent conveyance claim is time barred as it was not brought within four years after it arose. (*See id.*) The alleged fraudulent transfer occurred on July 1, 2001, yet suit was not commenced until June 2008. (*See id.*) Moreover, APC claims that APS has no liability to Plaintiff in the first instance because Plaintiff does not hold an enforceable arbitration award against APS. (*See id.*)

Plaintiff responds that APC is liable for the arbitration award – which Plaintiff contends is an award against APS – due to common law successor liability, under the doctrines of de facto merger, mere continuation, and alter ego. (*See* D.I. 160 at 8-9) Plaintiff further contends that the transfer of assets from APS to APC to APC's sole shareholder in 2001 is a violation of the Uniform Fraudulent Trust Act. (*See id.* at 12; *see also* D.I. 1)

### A. De Facto Merger, Mere Continuation, Alter Ego

Taking the evidence in the light most favorable to Plaintiff, the Court concludes that no reasonable factfinder could find that APC is the successor to APS as the result of a de facto merger, under the mere continuation doctrine, or as an alter ego.

The record does not permit a reasonable finding that the elements of a de facto merger can be proven. Under Delaware law, a finding of a de facto merger requires a showing that: (1) one corporation has transferred all of its assets to another corporation; (2) payment was made

26

in stock, issued by the transferee directly to the shareholders of the transferor corporation; and

(3) in exchange for their stock, the transferee agreed to assume all the debts and liabilities of the

transferor. *See Xperex Corp.,* 2004 WL 3053649, at \*2. Here, neither the 2001 spin-off of APC

from APS nor the 2004 transactions (approved by the Ohio court) constituted a transfer of all

assets; nor did either transaction involve receipt of stock from APC; nor did APC agree to

assume all debts and liabilities of APS.[11]

      The record evidence, again taken in the light most favorable to Plaintiff, also fails to

provide sufficient support for a reasonable factfinder to conclude that APC is the mere

continuation of APS. Continuation is a narrowly construed doctrine. *See Elmer v. Tenneco

Resins, Inc.,*698 F. Supp. 535, 542 (D. Del. 1988). It is undisputed that APS and APC co-existed

from 2001 to 2004. *See generally* Tr. at 83-84 (Plaintiff's counsel: "For a short period of time,

between July of 2001 and October of 2002, APS continued buying the . . . product and shipping

it to APC."). While it is also undisputed that APC continued at least one product line that APS

formerly sold (*see* Tr. at 47-48), that is not a basis from which a reasonable factfinder could

conclude that the businesses are the same such that APC is a mere continuation of APS. Hence,

while there may be genuine disputes of fact – as to whether, for example, marketing materials for

APC assume some of APS's history as that of APC, the derivation of the products sold by both

entities, and why APC used some of APS's gross income in connection with a tax credit (*see* D.I.

173 at 6) – these disputes are not material in light of the remainder of the record. No reasonable

---

[11]Plaintiff concedes that if sale of stock is a fact it must prove to establish a de facto
merger, Plaintiff cannot do so, as "[t]here was no exchange of stock." (Tr. at 82) The Court is
unpersuaded by Plaintiff's contention (Tr. at 81-82) that it should find, as Chancellor Chandler
did in *Xperex,* 2004 WL 3053649, at \*3, that Defendants' "conduct does not pass the smell test"
and, therefore, permit the claim to proceed.

factfinder could conclude on this record that APC is a mere continuation of APS.

Plaintiff further contends that APC is the alter ego of APS. However, as the Court has explained earlier, Plaintiff has failed to meet its burden to adduce evidence from which a reasonable factfinder could conclude that APC was created or used to justify a wrong, protect a fraud, or defend a crime. *See Owl Fumigating Corp.*, 24 F.2d at 718.

Accordingly, APC is entitled to summary judgment.

### B.     Fraudulent Conveyance

For the same reasons the Court discussed in connection with the expiration of the statute of limitations for Plaintiff's fraudulent conveyance claim as against the Individual Defendants, so, too, did the statutory period run out before Plaintiff asserted its fraudulent conveyance claim as against APC. The alleged fraudulent transfer of assets to from APS to APC occurred on July 1, 2001. More than four years had passed before Plaintiff filed its Complaint in June 2008. Additionally, June 2008 was more than one year after "the transfer or obligation was or could reasonably have been discovered by" Plaintiff. 6 Del. C. § 1309.

Thus, APC is entitled to summary judgment on Plaintiff's claim of fraudulent conveyance.[12]

### C.     Enforceable Arbitration Award

APC contends there is no arbitration award against it that is enforceable by Marnavi.

---

[12]In its briefing, Plaintiff argues: "Discovery in this case revealed, for the very first time, the transfers from APC . . . to P2000 in the form of nearly $8 million in license fees and royalties, between 2004 and 2009 alone, for 'technology' that was <u>not</u> being used to manufacture APC's current Marineline product." (D.I. 161 at 17) None of this is alleged in the Complaint, which Plaintiff did not seek leave to amend. In any event, Plaintiff does not identify record evidence from which a reasonable factfinder could conclude that these transfers satisfy the elements of a fraudulent conveyance claim.

This argument consists of two parts: (i) any arbitration award was against GATT, not APS, so even if APS became APC that does not create a liability for APC in connection with the arbitration; and (ii) the holder of the arbitration award is Jilmar, not Marnavi, so Marnavi has no ability to enforce the arbitration award. *(See, e.g.,* D.I. 157 at 17-18) Given that the Court is granting summary judgment to APC on two other grounds, as explained above, it is not necessary for the Court to resolve these additional issues.

## VII.   CONCLUSION

An appropriate Order, consistent with this Memorandum Opinion, will be entered.